Thomas **BUSBY** and James Iman, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 17366.

United States Court of Appeals Ninth Circuit.

Nov. 27, 1961.

Hersh & Hadfield, by LeRoy Hersh, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., by John Kaplan, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and JAMESON, District Judge.

HAMLIN, Circuit Judge.

This is an appeal from a judgment of conviction in the District Court of the United States for the Northern District of California for possession of a firearm which had not been registered in accordance with 26 U.S.C.A. § 5841, such possession being in violation of 26 U.S.C.A. §§ 5851 and 5861. The jurisdiction of this court is founded upon 28 U.S.C.A. § 1291.

On or about 1 a. m. on December 23, 1960, in San Francisco, Police Officer C. C. Ryder received a call while at the Taraval Police Station that there were suspicious men in an automobile. Pursuant to that call Ryder went in a patrol car to No. 1 Lakeshore Plaza where a bar and a restaurant (Grant's Charcoal Broiler) are located, expecting to find a white automobile which he had been informed was thought to be involved. When he arrived at No. 1 Lakeshore Plaza a civilian unknown to him pointed to a red and white DeSoto automobile moving away from him some blocks distant and said, "Follow that car; those are the men they want." As Ryder followed the car he saw that the light over the license plate was out. Ryder pulled his patrol car behind the automobile he was following, turned his red lights on, and signaled the car to stop, which it did. The driver of the car, Busby, got out of the car and started to walk back to the patrol car and Ryder got out of his patrol car and walked toward the car in front of him. Busby was asked whether or not he had a driver's license and he was unable to produce one. Ryder then talked to the occupants of the car. One of them stated that he was the owner of the car and produced a driver's license. When Ryder first talked to the occupants of the car, one of them, Wayman, was sitting in the right front seat and was wearing an army olive drab jacket. While the conversation was going on, Wayman took off this jacket and placed it on the front seat of the automobile.

About the same time, officer McDonald, who was in a radio patrol car, received a broadcast on the police radio to the effect that there were holdup suspects in the vicinity of No. 1 Lakeshore Plaza. He was directed to go there. McDonald went to the bar and restaurant and talked to the bartender. He was told that earlier that evening about 11 p.m. the defendant Busby, who was known to the bartender, had entered the bar, sat down, ordered a highball and conversed with the bartender. The bartender told McDonald that he knew that Busby had been involved in an armed robbery of a gasoline station a few months before, that Busby had told the bartender that he was out on bail awaiting a hearing, and that Busby had then asked the bartender, "What would you do if I stuck a heater in your face?" The bartender replied to Busby that he would give him the money if that occurred. Busby then inquired of the bartender at what time the bar closed and was informed it would close at 1 a.m. The bartender also related that while Busby was in the bar another man entered, sat down at a table, and had a drink. Neither Busby nor this other man showed any recognition of each other. However, the bartender saw Busby leave and saw him get into an automobile with this other man who had been in the bar. A third man was also in the car. McDonald was told that it was a red and white DeSoto and was given the license number. The bartender also told McDonald that about 1 a.m., after the front door was locked, Busby had knocked and asked to be admitted. Upon being refused, he left and got back into his automobile. The car was then seen being driven around the block in front of the place. It was at that time that the bartender became alarmed and called the police.

McDonald then called Police Communications and learned that officer Ryder had

stopped the car at 19th Avenue near Vicente Street, and McDonald sent word that he would join Ryder.

When McDonald arrived at the automobile which Ryder had stopped, there were three men in the car—two men in the front seat and one in the rear. McDonald then directed the three men to step out of the automobile. When the doors of the automobile opened to permit the men to get out the dome light in the automobile went on and the interior of the car was illuminated by this light. McDonald then saw a sawed-off shotgun lying in the back of the car, partially under the seat.

McDonald testified that prior to the time he saw the shotgun he did not in any way move the seat of the automobile forward or backward. After the shotgun had been discovered by McDonald, the men were searched and the car was searched. A loaded Mauser automatic pistol was found under the rear seat, and under the right front seat a 25-calibre Colt automatic pistol with a bullet in the chamber was found. Busby, Iman and Wayman all denied any knowledge of the guns.

Also found in the car were five ladies' nylon stockings, three rolls of white adhesive tape, gloves, flashlights, and an electric drill. The army jacket which had been taken off by one of the suspects was searched, and it contained three rolls of tape and one of the stockings.

The appellants were then taken to the police station. They were later indicted by the United States Grand Jury upon a charge of possession of an unregistered shotgun having a 10½ inch barrel in violation of 26 U.S.C.A. §§ 5851 and 5861. A jury trial was waived and after a trial before the court appellants were convicted and sentenced to imprisonment by the district judge.

Prior to their trial appellants, pursuant to Rule 43 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., moved the district court to suppress the evidence of the sawed-off shotgun. This motion was denied. At the trial, appellants' objection to its admission in evidence was overruled.

Appellants contend that the shotgun evidence was obtained as a result of an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and that the district court erred in admitting it into evidence. Appellants further contend that the district court erred in permitting officer McDonald to testify over objection as to the information he had obtained prior to his reaching the automobile containing the appellants. Officer Ryder testified that prior to the time the automobile was stopped by him he had no knowledge or information that the occupants of the car had committed any offense, other than that the license plate light was out in violation of the California Vehicle Code.[1]

Officer McDonald testified that prior to the time he had ordered appellants out of the automobile he had no knowledge that they had committed any crime or that they were then committing any crime.

The government concedes that there was no probable cause for an arrest or for a search at the time officer Ryder stopped the automobile. Appellee contends, however, that officer McDonald had received sufficient information prior to the time that he arrived at the stopped automobile to give probable cause "to believe appellants Iman and Busby had been guilty of a crime, to-wit, conspiracy to commit armed robbery."

Under our view of the case, it is not necessary for this court to pass upon the merits of the last mentioned government contention, and we therefore decline to do so.

In determining what evidence should be excluded because obtained by an illegal search and seizure, the Supreme Court, in Rios v. United States,[2] has established the importance to be placed upon the time when the arrest is made. In

1. § 24601.

2. 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

that case contraband evidence would have been illegally obtained if discovered after an arrest (for which there was no probable cause) was made. However, the evidence would have been proper if discovered without a search prior to the arrest since the sight of it would have given probable cause for the subsequent arrest. Thus, the legality of the evidence turned "upon the narrow question of when the arrest occurred."[3]

Applying the principle of Rios to the instant case it can be seen that if the arrest and search preceded the discovery of the shotgun, when there was no probable cause for an arrest or search, the evidence would have been obtained illegally. On the other hand, the sight of the shotgun before any arrest or search had been made would, then, have given the officers probable cause to believe that a crime was being committed in their presence. An arrest and search without warrants would then be legal.

■ There was no arrest or search in the instant case until after the illegally possessed weapon was disclosed. An arrest is defined in California as "taking a person into custody."[4] No one had been taken into custody in this case until after the shotgun which gave rise to probable cause was seen. Certainly not every police practice constitutes an arrest or search. If a defendant is asked what he is carrying and he replies "moonshine whiskey"[5] or "home brew"[6] there has

been no arrest or search. If defendants are stopped for having faulty lights and the policeman opens the car door and interrogates the defendants there has been no arrest or search.[7] If persons are stopped for questioning while leaving a gathering of known criminals there has been no arrest.[8] Similarly, in this case there was no arrest or search when officer Ryder stopped the car after seeing a violation of the California Vehicle Code[9] or when officer McDonald asked the appellants to step out of the car after having received information from the bartender. Considering the hour of the morning, the information received and all the surrounding circumstances, the officers were perfectly justified in making inquiries of the appellants and in asking them to step out of the automobile. These actions appear to have been proper police practice under the circumstances, and certainly this routine investigation did not constitute an arrest or search.

■ The undisputed facts show that when the appellants were asked to step out of the car the dome light went on, illuminating the partially disclosed shotgun. There is no evidence indicating that officer McDonald made any search of the car to find the shotgun or that he in any way entered the car or did anything except to look at what had been revealed in the car when the dome light was illuminated. Seeing the gun gave the officers probable cause to make an arrest and a search for additional evidence.

3. Id. 364 U.S. at 262, 80 S.Ct. at 1437. In Rios two Los Angeles police officers approached a taxicab in a district known for "narcotics activity" after having seen the defendant look up and down the street, walk across a parking lot and get into the cab. The officers were not acting on any information concerning the defendant, did not know the defendant, were not searching for a participant in a particular crime and possessed no warrants for arrest or search. A package containing narcotics fell to the floor of the cab and was revealed to the policemen. The Court remanded the case to the district court so that it could determine when the arrest had been made by evaluating the conflicting evidence. The exact chronol-

ogy of events could not be determined without an evaluation of the conflicting testimony.

4. California Penal Code § 834.

5. Poulas v. United States, 95 F.2d 412 (9th Cir., 1938).

6. Weathersbee v. United States, 62 F.2d 822 (5th Cir., 1933).

7. United States v. Jankowski, 28 F.2d 800 (2d Cir., 1928).

8. United States v. Bonanno, 180 F.Supp. 71 (D.C.S.D.N.Y.1960), rev'd on other grounds, 285 F.2d 408 (2d Cir., 1960).

9. § 24601. See note 1 supra and accompanying text.

■ Once there is probable cause for an arrest without a warrant it is immaterial that a search (without a warrant) precedes the arrest. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L. Ed. 629 (1931). Thus, as long as we decide (as we do) that the arrest *and* search took place after the contraband was seen, and thus after there was probable cause to believe that a crime was being committed, we need not decide the precise moment when the arrest was made. That is to say, once it is established that the shotgun was seen before either an arrest or search we need not decide whether the search came before or after the arrest.

■ Appellants' reliance on Henry v. United States [10] is misplaced, since the prosecution in that case conceded both at trial and on appeal that the arrest took place when the car was stopped by the federal agent, i.e., the arrest took place before any contraband was discovered and before any probable cause existed.[11] It is fundamental that an arrest without probable cause can not be validated by evidence obtained in a subsequent search and likewise that the search can not be validated by the invalid arrest.[12] However, in the instant case the arrest and search were valid. There was neither an arrest nor a search until after probable cause had been established by the illumination of the illegally possessed weapon.

We agree with the statement contained in United States v. Bonanno: [13]

"While the Fourth Amendment may be construed as encompassing 'seizure' of an individual, it cannot be contended that every detention of an individual is such a 'seizure'. If that were the case, police investigation would be dealt a crippling blow,

by imposing a radical sanction unnecessary for the protection of a free citizenry."

In this case there was a routine investigation by the officers who were responding to reported occurrences. To ignore such reports would seem to be a dereliction of duty. We see no unnecessary or improper interference with the rights of individuals in the stopping of the automobile containing appellants or in the requiring of the appellants to step out of the car while inquiries were being made.

■ The appellants' objection to the testimony of officer McDonald concerning the conversation with third persons is not well taken. It is well established that hearsay evidence is that evidence of out of court assertions by third persons which is admitted to prove the truth of the matter asserted.[14] While it is clear that the testimony of officer McDonald concerned out of court assertions by third persons (i.e., what others had said to him), it is equally clear that his testimony was not admitted to prove the truth of the matter asserted, i. e., that the appellants actually had done what others had said they had done. This evidence was admitted merely to establish the facts and circumstances upon which officer McDonald could justify his routine investigation and actions such as asking the appellants to step out of the automobile. Appellants would have us believe that police officers are never justified in making investigations upon the basis of hearsay. Such is not the law.[15] Furthermore, none of the policy reasons which underlie the rule against the admission of hearsay are applicable as to what was told to officer McDonald on December 23, 1960. His testimony was made under oath while subject to cross

---

10. 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 134 (1959).

11. Id. at 103, 80 S.Ct. at 168.

12. Johnson v. United States, 333 U.S. 10, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1947).

13. 180 F.Supp. 71, 78 (D.C.S.D.N.Y.1960).

14. See McCormick, Evidence §§ 227 and 228 (1954).

15. Cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958).

examination and while his demeanor was subject to the court's scrutiny. We repeat, this contention is without merit.

The judgment of conviction of the district court is affirmed.