James Eandall Creel, P. J.
The defense in this case challenges the applicability of subdivision (2) of section 245 of the Conservation Law to the uncontroverted facts herein presented *958 as to the defendant’s possession of a loaded shotgun in his automobile.
This often-amended section (245) of the Conservation Law provides ‘ ‘ Prohibitions on the use and possession of firearms. * * * (2) No firearm except a pistol or revolver shall be carried or possessed in or on an automobile unless it is unloaded in both the chamber and the magazine. Nothing in this section permits the possession of a pistol or a revolver contrary to the Penal Law. ’ ’
Prior to the case having been moved for trial, the defendant had omitted, as is required by the rules of the court, to move on written notice to suppress on the grounds that an illegal search and seizure of the shotgun here involved had occurred, but he was nonetheless permitted to so move during the trial.
The uncontroverted facts developed upon the trial and the motion to suppress are as follows: On March 1, 1963, Detective Bartels of the Brooklyn South Burglary Squad, while on a special radio motor patrol, had his attention directed to a red Valiant car, bearing license plate NY,6K-8363. During his following of this car, he observed that the defendant was the driver and the sole occupant. At 1:00 p.m., at Union Street and the Grand Army Plaza, the detective stopped this car and asked the defendant, the driver to produce and show his registration and driver’s license, pursuant to the provisions of subdivision 4 of section 401 of the Vehicle and Traffic Law. It was while this was transpiring that the detective observed the shotgun, a “ sawed off ” or “ military ” shotgun upon the front seat beside the driver.
To this experienced detective, a qualified expert on guns, it could not but be observed that this was the type of gun which has proved so effective for close in-fighting in both military and gang wars. He observed that the shotgun was loaded; the gun was in an upturned position which gave him a view into the chamber, and a view of a portion of the shiny brass percussion cap of the shell in the chamber. The defendant was thereupon arrested for the possession of a loaded shotgun in his automobile in violation of subdivision (2) of section 245 of the Conservation Law. The shotgun was thereupon examined by the detective, and in addition to the shell in the chamber, there were found four other shells in the magazine. The shotgun was an automatic and its barrel was well under 20 inches long.
During the trial, the detective was asked to demonstrate the position in which he first observed the shotgun. This demonstration revealed that the gun was in a ready position beside the defendant driver “across the seat”, the short barrel resting *959 forward on the floor; the butt or stock resting on the seat in such an upturned position that with one co-ordinated movement of the right hand, wrist and arm, the driver could have placed the right hand on the gun with the index finger on the trigger, and with a turn of the hand and wrist, and a lifting of the right arm could have brought the gun to the shoulder for aiming and firing.
While the District Attorney conceded that the defendant was “ not hunting for squirrels ” in this thickly settled area adjacent to Prospect Park, and while it could under circumstances of this thickly settled portion of this metropolitan area be inferred with some certainty that the defendant was not hunting for feathered or furry game, is there the same certainty that the quarry might not possibly have been of the two-legged homo sapien variety? As Judges of this court whose daily grist brings us in close contact with all types of crime of this metropolitan area, we cannot be entirely insensitive to the possible sinister connotations of this loaded type of weapon in this ominous readily fireable position, even though the detective for reasons known to him did not choose and indeed declined to articulate and reveal to the court any of such reasonable grounds he may have had for following and stopping this defendant.
The defendant’s attorney strongly urged that the action of this detective in stopping the defendant and asking for his registration and driver’s license, though performed precisely in the manner provided by subdivision 4 of section 401 of the Vehicle and Traffic Law, was nonetheless offensive, officious police action, in violation of the defendant’s constitutionally protected rights ; that it was, indeed, “ a poisoned tree which could bear but poisoned fruit”, and that all evidence of the gun must accordingly be suppressed and excluded.
This statutory provision of the Vehicle and Traffic Law is but declaratory of a long-established and recognized common-law right of police officers on crime prevention patrol duty to briefly stop and inquire of citizen and/or criminals to ascertain that only legal activity is being carried on. The performance of such crime prevention patrol duty is one of the very reasons that metropolitan police forces were brought into being in the mid-nineteenth century. This established common-law right of police crime prevention patrol duty has not been outlawed, as defense counsel insists, by the long line of Federal cases, starting with Weeks v. United States (232 U. S. 383) extending to Mapp v. Ohio (367 U. S. 643). These cases have but sought to judicially regulate only the abuses to which this common-law right is susceptible. But not one of the cases cited by counsel or known to the court have declared that the action of Detective *960 Bartels in stopping the defendant and asking for his registration and license herein to be legally offensive or constitutionally unreasonable. We accordingly hold the action of the detective herein to be constitutionally reasonable, and deny the motion to suppress; and do receive and consider the shotgun in evidence. The arrest of the defendant, upon observing the loaded military type shotgun in the car driven by the defendant was legal and proper; a misdemeanor was being committed in the presence of the detective. (Code Grim. Pro., § 177; Conservation Law, § 387, subd. [1].)
It remains only to consider the defendant’s contention that subdivision (2) of section 245 of the Conservation Law can have no proper application to this defendant. This contention is not based upon the statute’s language which is most all-inclusive and general, but it is urged from the fact that it appears in the Conservation Law and in an article entitled “ Hunting ”.
From these latter facts, defendant’s attorney asks that we find that in enacting this statute, it was the Legislature’s necessarily implied intention that the statute should be applicable only to those who are engaged in hunting wild game. But it must be noted that it is not an uncommon practice for Legislatures to place criminal and penal provisions of general and universal application in such widely diversified classifications of the statutory law as the Public Health Law, the Vehicle and Traffic Law, and the Administrative Code of the City of New York, to mention a few. Hence, the placing of this penal provision in the Conservation Law has not that significance in the absence of any clearer expression of legislative intent which the defendant urges. This statute has a long legislative history; has been frequently amended with each amendment eliminating qualifications and limitations, and has finally been cast in the form of a malum prohibitum statute of State-wide scope and all-inclusive universal application in this State. And indeed, would it not border upon the macabre to hold that this statutory language which evinces the expressed purpose of protecting human life from the thoughtless hazards of carrying loaded shotguns and rifles in automobiles should be applicable only in areas where feathered and fur-bearing animals can be the quarry, but have no applicability in the metropolitan areas of human congestion?
The defendant’s motion to dismiss made at the close of the case is denied, and the defendant is found guilty of a violation of subdivision (2) of section 245 of the Conservation Law.
Concur — Kenneth M. Phipps and Raymond A. Tierney, JJ.