UNITED STATES of America ex rel.
Charles FARRUGIA, Petitioner,

v.

Francis BHONO, as Warden of Rikers
Island Penitentiary, Respondent.

No. 66 Civ. 303.

United States District Court
S. D. New York.

July 20, 1966.

392

Anthony F. Marra, New York City, for petitioner; Joshua N. Koplovitz, New York City, of counsel.

Nat H. Hentel, Dist. Atty. of Queens County, Kew Gardens, N. Y., for re-

spondent; Benjamin J. Jacobson, Asst. Dist. Atty., of counsel.

WEINFELD, District Judge.

█ Petitioner, now serving an indeterminate sentence of up to three years in the New York City penitentiary, imposed under a judgment of conviction entered upon a jury verdict for felonious possession of a dangerous weapon, a .32 automatic pistol, seeks his release upon a federal writ of habeas corpus, claiming that the weapon had been seized in violation of his rights under the Fourth Amendment. Petitioner challenged the reasonableness of the search in the state courts on a pretrial motion to suppress which, after a hearing, was denied. He renewed his constitutional attack upon the trial when the weapon was offered in evidence, and again advanced his contention on direct appeal to the Appellate Division, which affirmed the judgment of conviction.[1] Leave to appeal to the New York Court of Appeals was denied. Thus, petitioner has exhausted available state remedies and is properly before this court.[2]

The pistol came into the state's possession under the following circumstances: At about 4 a. m. on September 29, 1963, New York City Patrolman John Riordan, cruising in a radio patrol car with another officer, was instructed to proceed at once to the vicinity of Baxter Avenue and Ithaca Street, Elmhurst, Queens, to investigate with respect to an assault and robbery which had been reported as having occurred nearby. When the officers reached the area they observed a 1962 Pontiac automobile parked at the curb within seventy-five feet from where the crime had been reported as having been committed. Events following are best narrated by Officer Riordan's direct and

---

1. People v. Farrugia, 23 A.D.2d 723, 258 N.Y.S.2d 357 (2d Dep't 1965).

2. The District Attorney is in error in his claim that the failure of petitioner to apply to the Supreme Court of the United States for certiorari forecloses consid-

eration of his claim by this court because of the failure to exhaust available remedies. See Fay v. Noia, 372 U.S. 391, 435–436, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), overruling Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950).

detailed testimony upon defendant's trial:

"We pulled up. I got out of the radio car. I saw two male whites, one was sitting in the front behind the driver's side, the other was in the left rear, directly behind him. I approached the car. The one in the front, the defendant [Farrugia], had his head down with his eyes shut; the other male white, who was sitting in the back, had his head back with his eyes shut. The windows were closed and the doors were locked. I had to knock a few times on the window. Finally, the defendant, who was sitting in the front seat, opened his eyes and looked up. I motioned with my left hand to pull down the window. When he did so, I questioned him as to why he was there. I said, 'What are you doing here?' He said, 'We're resting.' I said, 'Who owns the car?' He said, 'My sister and I.' I said, 'Do you have a license and registration?' He said, 'Yes, sir, I do.' I said, 'May I have it?' At that time, the male white that was sitting in the rear was awake. I asked for identification from him. The defendant then opened the door with his left hand, and when he did so, the lights on the inside went on showing the whole interior of the car. He then reached for his wallet, and as he did, I observed protruding underneath the right rear of the seat in the back what appeared to be an inch of an automatic. I then told both the defendants to step out of the car. I got the license and registration from the defendant. I then told him to step back. I reached in and with my two fingers pulled out the automatic from underneath the seat. I then took it, stepped out of the car, and I questioned the both defendants as to who owns the gun, or if they knew anything about it. They both denied it, and at that time I placed them both under arrest and took them to the 110th Precinct."

This was substantially the same testimony that was given by Officer Riordan upon the pretrial motion to suppress.

■■ Under New York law, Officer Riordan had a clear right to require defendant to produce his license and registration,[3] even though at the time he was not driving the Pontiac car. Section 401(4) of New York's Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, which gives a patrolman such authority, "is but declaratory of a long-established and recognized common law right of police officers * * * to briefly stop and inquire of citizen and/or criminals to ascertain that only legal activity is being carried on."[4] This common law right of the police to make brief inquiry of a citizen's activities, without arresting him, is recognized even in the federal cases,[5] and fully justified the inquiry which Officer Riordan here made of defendant.

■ It was during the course of this entirely lawful inquiry that the door of the car was opened by the defendant, bringing into play the light inside the car, which enabled Riordan to observe the portion of the gun protruding from underneath the seat. Under New York law possession of a dangerous weapon,

**3.** See N.Y. Vehicle & Traffic Law § 401 (4); People v. Battle, 12 N.Y.2d 866, 237 N.Y.S.2d 341, 187 N.E.2d 793 (1962); People v. Scianno, 20 A.D.2d 919, 249 N.Y.S.2d 456 (2d Dep't 1964); People v. Isaac, 36 Misc.2d 1018, 239 N.Y.S.2d 624, 626 (Sup.Ct.1963); People v. Russo, 38 Misc.2d 957, 239 N.Y.S.2d 374, 377 (N.Y. City Crim.Ct.1963).

**4.** People v. Russo, supra note 3, at 959, 239 N.Y.S.2d at 377.

**5.** See Lipton v. United States, 348 F.2d 591, 593 (9th Cir. 1965); United States v. Vita, 294 F.2d 524, 530 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962); Trilling v. United States, 104 U.S.App.D.C. 159, 260 F.2d 677, 700 (1958) (concurring and dissenting opinion); United States v. Bonanno, 180 F.Supp. 71, 77-81 (S.D. N.Y. 1960).

unless authorized, is a crime [6] and, with exceptions not here pertinent, all occupants of a car in which such a weapon is found are deemed presumptively in possession.[7] The presence of the weapon in the car indicated that as to each person therein, including, of course, the petitioner, the officer had reasonable cause to believe that a crime was then and there being committed. Accordingly, there was probable cause for the defendant's arrest and the seizure of the gun as an incident thereof.[8]

The defendant contends that he opened the car door only after Riordan had ordered him out and not while he was seated in the car. The state record lends no support to this claim, but even if it did, the fact that the petitioner opened the door to step out in response to the officer's request would not have been violative of the defendant's Fourth Amendment rights, since such a request under all the circumstances would have been reasonable.[9] Once the gun came into sight of the officer he had probable cause for the defendant's arrest and the seizure of the gun as an incident thereof. Nor is it of any significance that Officer Riordan seized the gun before formally placing the defendant under arrest.[10]

Petitioner, however, contends that his arrest was without probable cause because the police officer's testimony that he could identify the object as a revolver by its inch protrusion from underneath the rear seat is incredible as a matter of law. Probable cause, however, requires no more than " 'a reasonable ground for belief in guilt,' "[11] and "[i]n dealing with probable cause * *, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[12] Surely an experienced police officer [13] could, upon seeing one inch of what appeared to be a gun, reasonably conclude that he was looking at a dangerous weapon and not a toy. It is not essential to probable cause that the

6. See N.Y. Penal Law, McKinney's Consol. Laws, c. 40, § 1897.

7. See N.Y. Penal Law, § 1899.

8. See United States v. Paradise, 334 F.2d 748, (3d Cir. 1964); Busby v. United States, 296 F.2d 328 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962); Campbell v. United States, 110 U.S.App.D.C. 109, 289 F.2d 775 (1961); Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960); Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); People v. Battle, 12 N.Y.2d 866, 237 N.Y.S.2d 341, 187 N.E.2d 793 (1962); People v. Scianno, 20 A.D.2d 919, 249 N.Y.S.2d 456 (2d Dep't 1964); People v. Russo, 38 Misc.2d 957, 239 N.Y.S.2d 374 (N.Y.City Crim.Ct.1963). See also Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960) (by implication). Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), on which petitioner relies, is distinguishable since the car therein was stopped by federal officers who lacked authority to stop it except to make an arrest and who, at the time they stopped the car, lacked probable cause for an arrest.

9. See Busby v. United States, 296 F.2d 328, 330–331 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962).

10. See United States v. Gorman, 355 F.2d 151, 159–160 (2d Cir. 1965); United States v. Boston, 330 F.2d 937, 939 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); Busby v. United States, 296 F.2d 328, 332 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962); United States v. Beigel, 254 F.Supp. 923 (S.D.N.Y., 1966).

11. Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

12. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

13. Compare Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, 86, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

officer see the entire weapon;[14] it is enough if, in terms of his experience, the portion he saw led him to believe the object was a prohibited weapon. Thus the petitioner's claim for the granting of the writ is without merit.

▇▇▇▇ The petitioner contends, however, that his petition should not be dismissed without a hearing de novo. His argument is that the pretrial judge, in denying his motion to suppress, applied an erroneous standard in reaching his decision when he stated "the burden of proof on a motion to suppress is upon the defendant. * * *" Petitioner urges that as a result the state fact-finding procedure was inadequate for the decision of his federal claim and that a federal hearing is mandated.[15] Accepting the petitioner's contention that the judge incorrectly stated the applicable governing standard as to the burden of proof,[16] the factual and uncontradicted basis upon which the decision was grounded remains. As already noted, two state fact-finding hearings were held. The basic facts which are at the hard core of petitioner's constitutional claim were fully developed on the motion to suppress and upon the trial. At both, the state relied upon the testimony of Police Officer Riordan, referred to above, to establish the existence of probable cause. The petitioner did not testify at the pretrial hearing. Although he did upon the trial, a reading of his testimony indicates not only that it does not contradict the substance of Riordan's testimony, but in fact that with a single exception [17] it is corroborative of the circumstances under which the arresting officer testified he came upon the gun.

Petitioner makes no claim that the state fact-finding procedures were not fairly conducted. He does not allege that at a hearing, if granted, he can or proposes to submit newly discovered evidence. Thus no purpose would be served by a third evidentiary hearing. Assuming, as this court does, that in the absence of a search or arrest warrant the burden of proof was upon the state to justify the arrest and the incidental search, the evidence was so substantial that the pretrial judge had no alternative but to conclude that the seizure of the gun from the floor of the car of which petitioner was the driver was an incident of a lawful arrest. The evidence was such that the state fully sustained its burden that the officer had probable cause to believe that in his presence the petitioner was in unlawful possession of a dangerous weapon in violation of section 1897 of the state's penal law, and the arrest was fully justified.

That the court may have made an inadvertent statement as to the standard of proof does not necessarily vitiate the fact determination. The pretrial judge's determination, as he noted,[18] was made

---

14. Busby v. United States, 296 F.2d 328, 331 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962). Cf. Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L. Ed.2d 259 (1960) (officers observed partly concealed canvas bag).

15. Petitioner relies on Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963), where the court said, "If the state trial judge has made serious procedural errors * * * in such things as the burden of proof, a federal hearing is required."

16. Where the arrest and the search are made without a warrant, the burden of establishing that probable cause existed for the arrest and the incidental search un-

der both federal and state law is upon the prosecution. See United States v. Elgisser, 334 F.2d 103, 110 (2d Cir.), cert. denied, 379 U.S. 881, 85 S.Ct. 151, 13 L.Ed.2d 87 (1964); United States v. Rivera, 321 F.2d 704, 708 (2d Cir. 1963); People v. Malinsky, 15 N.Y.2d 86, 91 n. 2, 262 N.Y.S.2d 65, 209 N.E.2d 694 (1965).

17. The single exception, as already noted, is petitioner's contention that the car became illuminated when he was ordered out of it rather than while seated in it.

18. The court's statement in full was as follows:

"Accepting the testimony of the police officer, and in view of the failure of the defendant to contradict it, which he has a right to do, and in view of the

upon evidence which was in no wise challenged, and it is clear that the state's proof measured up to the required standard. While it may well be that in a case involving a closely balanced and contested issue of fact the erroneous reference would require a different result, this is not such a case.[19]

Accordingly, the petition is dismissed.

fact that the burden of proof on a motion to suppress is upon the defendant, the Court finds that upon the established facts in this case that the police officer made an inquiry, as permitted by the Vehicle and Traffic Law, about the ownership and registration of this automobile, and in which this defendant and one Spano was seated, that while questioning the man behind the wheel, while the other defendant got out, without any search by this police officer, he observed a piece of an automatic sticking out. Under those circumstances, he had a reasonable cause to believe that a crime was being committed in his presence, to take the action that he did in arresting the defendant and taking the gun. The motion is denied."

19. Cf. United States v. Smalls, 363 F.2d 417 (2d Cir., 1966); United States v. Jones, 360 F.2d 92, 96–97 (2d Cir. 1966); Clark v. Beto, 232 F.Supp. 255, 258 (S.D. Tex.1964). See also United States v. Compania Cubana de Aviacion, 224 F.2d 811, 821 (5th Cir. 1955).