Charles James **MYRICKS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nó. 23635.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1967.

John C. Chambers, Amarillo, Tex., for appellant.

Patrick H. Mulloy, Jr., Asst. U. S. Atty., Fort Worth, Tex., Melvin M. Diggs, U. S. Atty., Dallas, Tex., for appellee.

Before BROWN, COLEMAN, and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal from a conviction for unlawful interstate transportation of a stolen vehicle, 18 U.S.C.A. § 2312, turns primarily on the legality and the time of the arrest by a Texas Highway Patrolman for failure of the driver to have in his possession a valid vehicle operator's license. This brings into sharp focus again the ironic fact that effective enforcement of an established uniform national policy through the sanction of federally imposed criminal laws depends often on the varying local principles of arrest, particularly without a warrant. The problem is peculiarly acute since Texas, unlike most jurisdictions, ordinarily restricts the power to arrest without warrant for a misdemeanor committed in the presence of the arrester to acts constituting "an offense against the public peace." The problem's solution is found in Texas statutes which equate Highway Patrolman with the vaunted Texas Rangers who are given distinctive express powers of arrest over highway (and other) travelers. Wrapped up, of course, in all of this are related contentions that the system of highway driver checks is an unconstitutional denial of the Fifth Amendment privilege against self-incrimination.

The facts can be severely capsulated.

On January 24, 1966, Appellant Myricks while driving a 1962 Rambler, in which John Carter, co-defendant, was a passenger, was stopped for a routine driver's license check in the vicinity of Vega, Texas, by Officer Olsen of the State Highway Department. After identifying himself, Officer Olsen asked to see Myricks' driver's license, and was told by him that he had none. Olsen then requested the registration certificate for the vehicle which Carter supplied from the glove compartment, but Myricks was unable to identify the person in whose name the vehicle was registered, stating, however, that it was his aunt. Officer Olsen advised the two men to follow him to the office of the Justice of the Peace in Adrian, Texas, which they did. When they arrived at the office, Officer Olsen asked the two men if they were financially able to pay a fine if one were assessed. They replied that they were not. Officer Olsen then told Myricks and Carter that it would be necessary that they return to the County Seat of Vega, and directed them to proceed in the Rambler, that he would follow them until they arrived at Vega and then would get in front of their car in order that they could follow him to the Courthouse. When Olsen stopped at the Courthouse, Appellant Myricks and Carter turned the car around and fled in another direction. Immediately Officer Olsen notified the Vega Sheriff's office of the occurrence and started out in pursuit of the men. The Rambler went out of control, causing it to slide into a ditch, pitching the two occupants from the car. They continued to flee on foot. They stopped when Olsen fired his pistol into the air, whereupon they were handcuffed and searched for weapons. Sheriff Wheeler from Vega arrived at about this time. Olsen asked the men where they had picked up the car. Myricks looked at Carter and said, "Tell him where we got the car at," to which Carter responded with only a negative nod. Myricks and Carter were then taken to Amarillo in separate cars and brought before the United States Commissioner the same day. They both waived counsel and hearing before the Commissioner, after a full explanation of their rights under the Constitution. They were booked with violation of 18 U.S.C. § 2312.

Carter later entered a plea of guilty and was sentenced. Myricks, on February 1, 1966, appeared again before the Commissioner who appointed counsel for him. Represented by court-appointed counsel, Myricks pleaded not guilty and moved to suppress certain evidence. On April 26, 1966, the motion to suppress was heard by the Court out of the presence of the jury and denied. The trial proceeded, terminating in a verdict of

guilty on April 26, 1966, with sentencing on April 27, 1966.

Myricks' argument is based on the contention that the arrest occurred when he was initially stopped for the routine license check as this constituted restraint of his freedom of movement. This, he argues, denied due process of law because of the failure of the Patrolman to warn him that he need not reply and the failure to advise him of his right to counsel when the demand for his license was made. Consequently, as a result of this unlawful arrest, the fruits therefrom, consisting of evidence of flight, the conversation between Myricks and Sheriff Wheeler, subsequent to Appellant's futile attempt to escape, and the later statement made to Special Agent Lester of the FBI that Myricks and Carter knew the car to be stolen when they purchased it, were inadmissible in evidence. The Court erred, therefore, in denying the motion to suppress.

The substance of Sheriff Wheeler's testimony was that in response to his question as to why the men had attempted to run from the officers, Myricks admitted "we was in trouble." Pressed for explanation, Myricks told of meeting a man in a Pennsylvania bar who offered to, and did, procure a stolen car for $50.00 which Myricks and Carter paid.

According to FBI Agent Lester, Myricks, after warnings and assurance of right to counsel, related a similar story of learning about, and contacting, the man in a Pittsburgh bar who offered to, and did, procure for $50.00 the car which they knew to have been stolen.

We may assume that from the moment the Patrolman ordered Myricks and Carter to follow him into Adrian, Texas, they were under arrest, at least in the Texas sense of "restraint." [1] But that does not make such arrest either illegal or ineffectual for the federal crime of transporting a stolen vehicle. The arrest was for the Texas statutory offense of driving without a valid operator's license and failure to produce it on demand of a peace officer.[2]

Of course three questions emerge from this: (1) Were there probable grounds for knowing a violation was occurring? (2) Did acquiring this knowledge by the demand for production and inability to produce the driver's license constitute compulsory self-incrimination, and (3) Did the Patrolman have authority to make the arrest without warrant?

 The first is quickly answered. Upon the Patrolman's demand, Myricks did not, could not, produce a valid operator's license. Whether considered in

---

1. "When a person is arrested
"A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Vernon's Ann.Tex.Code Crim.P. art. 15.22 (1965).
See also
"Accusation"
"The word 'accusation' as used in this Code means a charge made in a lawful manner against any person that he has been guilty of some offense which subjects him to prosecution in the name of the State. One is said to be 'accused' of an offense from the time that any 'criminal action' shall have been commenced against him.
"A legal arrest with or without warrant; a complaint to a magistrate, or an indictment are examples of accusation. O.C. 356." Vernon's Ann.Tex.Pen.Code art. 343 (1953). The effective date of the

1965 Texas Code of Criminal Procedure is January 1, 1966.

2. "Drivers must have license
"No person, except those hereinafter expressly exempted, shall drive any motor vehicle upon a highway in this State unless such person has a valid license as an operator * * * under the provisions of this Act." Vernon's Ann.Tex. Rev.Civ.Stat. art. 6687b § 2(a) (1941). This provision applies to non-resident operators and provides that they may upon certain conditions use valid licenses issued to them by other states. Tex.Rev. Civ.Stat.Ann. art. 6687b § 3(3) (1941).
"License to be carried and exhibited on demand
"Every licensee shall have his operator's * * * license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand of * * * any peace officer." Tex.Rev.Civ.Stat.Ann. art. 6687b § 13 (1941).

terms of physical operations which had occurred up to the moment of the stop for traffic check or those which would occur immediately upon the car being driven on, the officer knew with positiveness that Texas law was being violated.

■■ The second offers little difficulty once the nature of the State's interest is considered. The Constitution is, it is often said, a living document. If it lives, it must take account of the dominant symbol of today's dynamic· society. It must recognize, therefore, that Texas has a legitimate interest in the roadworthiness of automobiles which transport, but which can maim and kill. Cf. Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 3 A.L.R.3d 1002. This comprehends both technical fitness of the driver and the mechanical fitness of the machine. After the event it is always too late. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the inspection may produce the irrefutable proof that the law has just been violated. The purpose of the check is to determine the present, not the past: *is* the car, *is* the driver now fit for further driving? In the accommodation of society's needs to the basic right of citizens to be free from disruption of unrestricted travel by police officers stopping cars in the hopes of uncovering the evidence of non-traffic crimes, cf. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Clay v. United States, 5 Cir., 1956, 239 F.2d 196; Clay v. United States, 5 Cir., 1957, 246 F.2d 298, cert. denied, 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69; Rios v. United States, 1960, 364 U.S. 353, 80 S.Ct. 1431, 4 L.Ed.2d 1688, the stopping for road checks is reasonable and therefore acceptable. Likewise, an arrest is proper if the check reveals a current violation which by its nature must have been taking place in the immediate past. State[3] and Federal Courts,[4] including this one,[5] have uniformly sustained such checks and arrests when not done as a subterfuge or ruse.

■■ And the third is likewise free of doubt under Texas law. Granted that under Art. 14.01,[6] the power to arrest without a warrant for misdemeanors is restricted to an "offense against public peace,"[7] which the offenses in Art. 6687b 22 and 13 (note 2, supra) presumably are not,[8] members of the Texas Highway

---

3. Commonwealth v. Mitchell, 1962, Ky., 355 S.W.2d 686, 688; Morgan v. Town of Heidelberg, 1963, 246 Miss. 481, 150 So. 2d 512; People v. Russo, 1963, 38 Misc. 2d 957, 239 N.Y.S.2d 374; City of Miami v. Arnovitz, 1959, Fla., 114 So.2d 784. The Texas Courts, however, have not passed on the question of the "authority of any peace officer to stop a motorist [under art. 6687b § 13] for the purpose of determining whether or not he is in possession of a valid driver's license." Pruitt v. State, Tex.Cr.App.1965, 389 S. W.2d 475, 477.

4. Lipton v. United States, 9 Cir., 1965, 348 F.2d 591; D'Argento v. United States, 9 Cir., 1965, 353 F.2d 327, 333–334.

5. Miller v. United States, 5 Cir., 1966, 356 F.2d 63, 67–68, approving *Lipton*, note 4, supra.

6. "Offense within view
"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an offense against the public peace." Tex.Code Crim.P.Ann. art. 14.01 (1965).

7. Head v. State, 1936, 131 Tex.Cr.R. 96, 96 S.W.2d 981; Romine v. State, 1960, 169 Tex.Cr.R. 629, 336 S.W.2d 181; Hackett v. State, 1962, 172 Tex.Cr.R. 414, 357 S.W.2d 391.

8. No cases have been cited or found which have characterized the offenses specified in Art. 6687b §§ 13, 22 or any other traffic offense, as "offenses against the public peace"; of course, where the requisite violence occurs in the course of a traffic violation, it may constitute an "offense against public peace." Cf, Minor v. State, 153 Tex.Cr.R. 242, 219 S.W.2d 467 (1949) (speeding through city streets); Brown v. State, 159 Tex.Cr. R. 306, 263 S.W.2d 261 (1954) (driving reckless and at an excessive rate of

Patrol are clothed with the power of Texas Rangers,[9] and Rangers are expressly empowered to make arrests without warrant under general law (see, e. g., Art. 14.01, note 6, supra) and "also in all cases when the alleged offender is traveling * * * in a motor vehicle * * *." [10]

Although this statute has not been construed by Texas Courts, we think the intention is clear to invest Rangers with added powers. To this extent for travelers by motor vehicle, Texas adopted the traditional rule allowing arrests for misdemeanors actually committed in the presence of the officer.[11]

■ Thus the arrest was lawful. All information obtained up to the moment of flight was obviously admissible. Of course the arrest did not terminate with flight. Consequently, when the two were reapprehended, the restraint was still pursuant to the valid arrest for the violation of the Texas traffic statute. Of course, attempted flight aroused suspi-

cions, but the evidence does not show that the officer considered that a new offense was indicated. For that matter, it was not even a "general inquiry into an unsolved crime," and consequently it cannot be said that the officer had "begun to focus on a particular suspect" of any such unknown crime. Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The inquiry and response testified to by Sheriff Wheeler was investigative only. Perhaps when the conversation was completed there was a basis for concluding that a Dyer Act violation had occurred, but prior to that time the process had not shifted "from investigative to accusatory" so that "its focus [was] on the accused and its purpose [was] to elicit a confession." Escobedo v. State of Illinois, supra. Therefore, Myricks can obtain no benefit from *Escobedo*. We may assume that Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, would require exclusion for want of adequate assurance of right to counsel, but it came

---

speed; Hackett v. State, 172 Tex.Cr.R. 414, 357 S.W.2d 391 (1962) (throwing coke bottle from a speeding car into the windshield of oncoming car).

9. "Art. 4413(12). The Texas Highway Patrol
"* * * *
"(4) The officers, non-commissioned officers and enlisted men of the Texas Highway Patrol shall be, and they are hereby clothed with all the powers and authority which they now have and exercise as members of the State Highway Motor Patrol of Texas, and their duties and functions shall be the same as the duties and functions they are now performing. In addition they shall be, and they are hereby clothed with all the powers and authority which is in this Act or otherwise by law given to members of the Texas Ranger force." Tex.Rev.Civ.Stat. Ann. art. 4413(12) (4) (1937).

10. "Art. 4413(11). The Texas Rangers
"* * * *
"(4) The officers shall be clothed with all the powers of peace officers, and shall aid in the execution of the laws.
"They shall have authority to make arrests, and to execute process in criminal cases; and in civil cases when specially directed by the judge of a court of record; and in all cases shall be governed

by the laws regulating and defining the powers and duties of sheriffs when in the discharge of similar duties; except that they shall have the power and shall be authorized to make arrests and to execute all process in criminal cases in any county in the State. All officers operating by virtue of this Act shall have the authority to make arrests, as directed by warrants, and without a warrant under *the conditions now authorized by law,* and also in all cases when the alleged offender is traveling on a railroad, in a motor vehicle, aeroplane or boat. When any of said force shall arrest any person charged with a criminal offense, they shall forthwith convey said person to the county where he so stands charged, and shall deliver him to the proper officer, taking his receipt therefor. * * *" Tex.Rev.Civ.Stat.Ann. art. 4413(11) (4) (1937).

11. This is consistent with the policy reflected in the Uniform Act Regulating Traffic on Highways, Tex.Rev.Civ.Stat. Ann. art. 6701d § 153 (1947), which, for typical traffic violations such as speeding, reckless driving, etc., provides that "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

too late. The offense was committed January 24, 1966, the trial was held April 26, 1966—prior to the prospective date of *Miranda,* June 13, 1966. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Of course, the FBI declaration was admissible since the proof showed the Agent complied with *Miranda.*

That leaves only the attack on the instruction as to possession. The charge was fair and adequate. Barfield v. United States, 5 Cir., 1956, 229 F.2d 936. It was not error to refuse the requested charge since, among other things, it was not adapted to the case or to concepts of criminal law.

Affirmed.