89 N.J. Super. 437 (1965)
215 A.2d 369
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROY BELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1965.
Decided December 15, 1965.
*440 Before Judges SULLIVAN, LEWIS and KOLOVSKY.
Mr. Samuel H. Stein, assigned attorney, argued the cause for appellant.
Mr. Gregory J. Castano, Assistant Prosecutor, argued the cause for respondent (Mr. James A. Tumulty, Jr., Hudson County Prosecutor, attorney).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
After trial by jury in the Hudson County Court, defendant was convicted of unlawful possession of narcotics in violation of R.S. 24:18-4. The narcotic, heroin in a glassine package, was found in the lower left hand lining of a coat allegedly belonging to defendant when he was searched at the precinct police headquarters to which he was taken after being placed under arrest. Defendant denies that the coat was his, but the jury's finding to the contrary is fully supported by the evidence.
On this appeal defendant argues that the evidence used against him was obtained by the police as a result of an unlawful search and seizure and that Judge Rosen, who heard defendant's pretrial motion to suppress that evidence but did not preside at the trial, erred in denying the motion. Defendant unsuccessfully attempted to renew the motion at the trial. The trial judge ruled, and properly so, that Judge Rosen's denial of the pretrial motion became the law of the case. State v. Fioravanti, 78 N.J. Super. 253 (App. Div. 1963). The alleged error in denying the pretrial motion is available to defendant as a ground of appeal on the appeal from his conviction. Ibid., at p. 256.
*441 The only evidence offered at the hearing on the pretrial motion was the testimony of three police officers; defendant did not testify.
In an oral opinion containing detailed findings of facts, Judge Rosen ruled that the search, although made without a search warrant, was lawful since it was incident to and followed a valid arrest, citing United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 683 (1950). His findings of facts could reasonably have been reached on sufficient credible evidence present in the record; we may not disturb them. State v. Johnson, 42 N.J. 146, 162 (1964).
The testimony disclosed that on September 14, 1963, at about 2:50 A.M., Patrolmen Baxter and McCarthy of the Jersey City Police Department were in a patrol car in the vicinity of 14th and Erie Streets in downtown Jersey City, when they observed a 1956 Chevrolet automobile traveling south on Erie Street, a one-way northbound street. The police gave chase, overtook the Chevrolet as it attempted to turn around at Erie and 13th Streets, and ordered the vehicle to the curb. Six men were in the Chevrolet. Patrolman Baxter testified:
"[I] proceeded to check the driver-license and registration. I ordered the driver out of the vehicle and there were five other occupants in the vehicle and they were moving around so for safety's sake, being there was just myself there at the present time  my partner was at the radio car yet  I ordered all the men out."
When asked on cross-examination his reasons for ordering the men out of the car, he replied,
"Safety factors, sir. I had six men stopped. I'm by myself. I have my partner in the rear of me. I can't observe six men when they're in a confined place, so for safety practices so I don't get my fool head blown off, when I stop a vehicle loaded with six men, I request everybody to get out of the car so that I can watch them."
Baxter further testified that when he stopped the vehicle, he placed the driver under arrest for the motor vehicle violation but did not then arrest any of the other men.
*442 As the men left the auto, Baxter saw an eye dropper on the right side of the back seat. Five years' experience as a police officer had taught Officer Baxter that "usually [such] an eye dropper is part of the paraphernalia used in the taking of narcotic drugs, mainly heroin." He called for additional help. Detectives Gerlowski and Colucci, who were cruising in a radio car nearby, responded.
Colucci testified that when he and his partner arrived at the scene, the six men were against the wall; he checked the general area around the vehicle and, on the roadway, directly below the right rear window of the vehicle, he found "a needle, a  like a cap that was burnt on the bottom  that was wrapped in tinfoil," and a package in a glassine case with white powder in it. Colucci, who had made "numerous arrests of narcotics men," recognized what he found as "the equipment that they use to take their own shot." At that point all six men were placed under arrest. The detectives then searched the auto and found another glassine package containing heroin under the rear seat. The six men were taken to the Second Precinct Police Station where they were searched.
Defendant contends that he was arrested when the automobile was stopped and he was compelled to get out and line up against the wall; that there was no probable cause for arresting him at that time and that, therefore, the search thereafter made violated his constitutional rights. On the other hand, the State contends that no arrest of the defendant took place until after the detectives had found the narcotic equipment and glassine package on the roadway directly below the right rear window of the automobile. If that be so, then the arrest and the search which followed were lawful since at that time the officers had probable cause to believe that an offense had been committed. State v. Smith, 37 N.J. 481, 495 (1962).
The basic issue therefore is, when did the arrest take place? Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); 2 Underhill, Criminal Evidence *443 (5th ed., 1965 Supp.) § 415A, p. 158. If the arrest occurred when the officers compelled the occupants to leave the car and line up against the wall, then "nothing that happened thereafter could make that arrest lawful, or justify a search as its incident." Rios v. United States, supra, 80 S.Ct., at p. 1436. Judge Rosen ruled that what the police did in requiring the occupants to leave the auto and line up against the wall constituted not an arrest but proper precautionary police procedures, and that the arrest did not take place until after the narcotics equipment was found on the roadway. We agree.
There is no absolute test as to when an arrest occurs. The action of the police officer must be evaluated in the context of the circumstances in which it takes place. Rios v. United States, supra; State v. Romeo, 43 N.J. 188, 205 (1964); cf. State v. Doyle, 42 N.J. 334 (1964); State v. Contursi, 44 N.J. 422, 433 (1965). Indeed, even the use of formal language of arrest is not conclusive on this issue. State v. Romeo, supra, at p. 206.
Not every detention is an arrest. State v. Romeo, supra, at p. 206; Rios v. United States, supra. Nor does Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), hold to the contrary. There the "prosecution conceded * * * that the arrest took place when the federal agents stopped the car," and the majority of the court was of the same view "on the facts of this particular case" (80 S.Ct., at p. 171). In Henry there was no justification for stopping the car unless the officers then had probable cause to believe that a crime had been committed and, on the facts of the case, the court found that they did not have such probable cause.
Here, however, the police were authorized to stop the car and to arrest the driver because of the violation of the Motor Vehicle Act which they observed. N.J.S.A. 39:5-25; State v. Padavano, 81 N.J. Super. 321, 328 (App. Div. 1963). What followed were, as the court below found, police practices and precautions which did not invade any constitutional rights of defendant. Busby v. United States, 296 F.2d *444 328 (9 Cir. 1961), certiorari denied 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962).
In Busby a police officer who had received a call about suspicious men in an automobile followed the automobile and then stopped it because the light over the license plate was out. Another policeman joined him and directed the three men in the automobile to step out. When the doors opened, the dome light went on and the policeman observed a sawed-off shotgun in the car. The court held that there had not been an arrest until after the shotgun was seen, saying:
"Certainly not every police practice constitutes an arrest or search. * * * Considering the hour of the morning, the information received and all the surrounding circumstances, the officers were perfectly justified in making inquiries of the appellants and in asking them to step out of the automobile. These actions appear to have been proper police practice under the circumstances, and certainly this routine investigation did not constitute an arrest or search." (296 F.2d, at p. 331)
Further, the continued detention of the six men until the arrival of the detectives was fully warranted by the suspicions aroused in a police officer familiar with equipment used by narcotic addicts when he observed the eye dropper on the back seat of the automobile when its occupants left it.
As the court said in State v. Hope, 85 N.J. Super. 551 (App. Div. 1964):
"A law enforcement officer has the right to stop and question a person found in circumstances suggestive of the possibility of violation of criminal law. Cf. State v. Taylor, 81 N.J. Super. 296, 312-313 (App. Div. 1963); People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32 (Ct. App. 1964); United States v. Vita, 294 F.2d 524, 530 (2 Cir. 1961). Such investigatory detention is not an arrest, `[a]nd the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest.' Rivera, supra, 252 N.Y.S.2d, at p. 461, 201 N.E.2d, at p. 34." (at p. 554)
Defendant also complains of the trial court's comments when a witness called by defendant appeared in court *445 without a coat or tie. While it might have been better for the trial court to have reserved its comments until the jury had retired, we perceive no prejudicial error in what transpired.
The judgment of conviction is affirmed.