159 N.J. Super. 408 (1978)
388 A.2d 268
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JAMES WALTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1978.
Decided May 24, 1978.
*410 Before Judges FRITZ, BOTTER and ARD.
Ms. Susan M. Scarola, Assistant Prosecutor, argued the cause for the appellant (Mr. John H. Stamler, Union County Prosecutor, attorney).
Mr. Edward Kopelson, Assistant Deputy Public Defender, argued the cause for the respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by ARD, J.A.D.
On leave granted, the State appeals from an order granting a motion of James Walton to suppress certain evidence seized without a warrant from the rear of defendant's motor vehicle. After the seizure defendant and another were indicted on various charges of breaking and entering with intent to steal, larceny, possession of burglary tools and receiving stolen property.
The evidence before the trial court consisted of the testimony of a police officer and that of defendant. Much of what occurred is not disputed, and where the testimony varied the trial judge "believed every word that the detective said" and found defendant's testimony to be entirely "incredible and unbelievable." However, the judge determined that the police officers arrested defendant and another for *411 failure to give a good account of themselves without giving them an opportunity to explain the circumstances of their presence at the time of their arrest. He concluded that this was a fatal defect in the arrest, citing State v. Zito, 54 N.J. 206, 218 (1969), and therefore any search incidental to this arrest was illegal. We disagree.
It is axiomatic that all searches without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant and the burden is upon the State to show that the search comes within an exception. Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971), reh. den. 404 U.S. 874, 90 S.Ct. 26, 30 L.Ed.2d 120 (1971); Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); State v. Whittington, 142 N.J. Super. 45, 51-52 (App. Div. 1976); State v. Brown, 132 N.J. Super. 180, 185 (App. Div. 1975); State v. Hannah, 125 N.J. Super. 290, 294 (App. Div. 1973), certif. den. 64 N.J. 499 (1974).
Although the failure to give defendant and his companion an opportunity to explain the circumstances of their presence makes the validity of their arrest under N.J.S.A. 2A:170-1 questionable, the subsequent seizure of the goods in question was not incidental to that arrest but the result of their being found in "plain view." Seizable items which inadvertently come into the view of an officer who has a right to be where he is, may be retained and used in prosecution of the crime to which they relate. Coolidge v. New Hampshire, supra; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); State v. Waltz, 61 N.J. 83, 88 (1972). We are satisfied that the items sought to be suppressed were in plain view of the police officers and the owner who had a right to be in the position to have that view and were therefore legally seized.
*412 It is uncontroverted that on February 26, 1975 two Mountainside police officers were dispatched to the parking lot of the Echo Lanes Bowling Alley, having "received a call from one of our patrol units regarding a suspicious vehicle traveling in the parking lot." Upon arriving at the parking lot the officers parked in a row of vehicles and observed a car with the same license plates as described in the dispatching message. It contained defendant and another and was traveling very slowly up and down the rows of cars ignoring open parking slots.
Detective Semancik, at times referring to a diagram of the area, testified to the following:
We observed the vehicle traveling very slowly up this alleyway here between cars, continuing up to the area, headed towards us. The vehicle then made a left turn down this row of vehicles and proceeded to come around very slowly, continue down past our row of vehicles.
Question: Did the vehicle stop at any point?
Answer: It may have stopped on occasion, stopped and start.
* * * * * * * *
It continued down this aisle and proceeded to make a left turn and come to the aisle from where we would pull our vehicle in. The vehicle then stopped at the far end of the  between these two aisles were parked cars. It stopped there.
Question: And could you observe what was happening inside the vehicle at this point?
Answer: No.
Question: About how long did it stop?
Answer: A few seconds, I can't really recall. It might have been maybe thirty seconds, I don't really recall.
Question: Did it start again?
Answer: Yes.
Question: And where did it go?
Answer: It now continued down the aisle where we had parked, still continuing very slowly. The vehicle stopped about approximately three cars from where our vehicle was. There is a couple of more cars over here and it stopped over here approximately and then it backed up and the vehicle stopped at this point here.
* * * * * * * *
Looking out through the side of the car I observed the vehicle, as I said, pull up and then back up a couple of feet and stop. After a few seconds I observed a passenger get out of the front right of the vehicle and proceed in a crouched position around the *413 vehicle in question and go towards the parked vehicles in the aisle where they were parked.
Question: And did you observe anything else at this time?
Answer: We waited for a few more seconds at which point we observed the individual that got out of the car come from the area of some parked cars around the back of the vehicle to jump into this vehicle.
He then testified that the police officers approached the vehicle, identified themselves and ordered the occupants outside. Defendant and his companion were placed under arrest for violating the provisions of N.J.S.A. 2A:170-1. While defendant and his accomplice were being held, the officers observed that all of the windows in defendant's vehicle were down on that winter night. They looked into the vehicle with the aid of their flashlights and saw a floral design canvas suitcase, a black bowling bag, ski boots and ice skates. Upon observing these items one of the officers checked the vehicles parked in the direction taken by the passenger when he left the vehicle in a crouched position. He found one vehicle with a small hole underneath the trunk lock and another vehicle with the trunk lock knocked out of it. They ascertained the owners through the Division of Motor Vehicles by the use of their radio and paged the owners in the bowling alley. Subsequently, one of the owners looked into defendant's vehicle and identified the floral suitcase, the bowling ball, bag and shoes as her personal property. Upon being advised that the articles in plain view were stolen property, the officers then seized these and other items and transported defendant and his companion to headquarters.
The pertinent portion of State v. Zito, supra, relied upon by the trial judge and respondent in attacking the validity of the arrest is found at 54 N.J. page 219 of the opinion where the court summarized its holding. Part of the summary stated:
* * * that the statute requires, as a condition for prosecution, that the officer offer the suspect a chance to explain away circumstances *414 which indicate presence for an unlawful purpose, unless the court finds that the circumstances prevented the offer or made it plainly unnecessary; * * *.
In failing to afford the suspects a chance to explain away the circumstances of their presence the police probably lost justification to search and seize incidental to this arrest. Our equivocation is caused by the court's recognition in Zito, supra, that at times the circumstances made an explanation "plainly unnecessary." One might argue that the circumstances in this case obviated the necessity of an explanation, but we need not decide that issue.
Unquestionably, the police were not violating defendant's constitutional rights in stopping him and investigating in light of what they observed. The characterization of the detention as an "arrest" is not necessarily dispositive of the legal effect of such action. Our Supreme Court in State v. Romeo, 43 N.J. 188 (1964), cert. den. 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed. 2d 563 (1965), considered a similar situation where an arrest was made although the purpose was temporary inquiry and investigation. After analyzing the circumstances surrounding the "arrest" of the defendant there, the court concluded that the action of the officer should not be considered an arrest. The court stated:
* * * We therefore conclude that, despite the formal language of arrest used by the agent, his action should not be legally characterized as such in the usual sense, cf. State v. Doyle, supra, 42 N.J., 334 at p. 342, but rather considered simply as a justifiable temporary detention of this defendant during the raid. Courts ought not to insist that policemen act on necessary spurs of the moment with all the knowledge and acuity of constitutional lawyers. The fundamental requirement of the Fourth Amendment is reasonableness. Granting requisite adherence to the basic essentials of that concept assuring proper recognition of the individual liberties sought to be safeguarded thereby, the validity of law enforcement conduct should not be judicially tested by post facto technicalities and formalisms of no vital importance. * * * [at 206]
Here, also, the formal language of the officers should not be dispositive. What really occurred was a justifiable *415 temporary detention during an investigation. Although the officers in the instant case announced an arrest, they did nothing but detain the defendant and his companion while attempting to ascertain what, if anything, they did. Detaining defendant and checking the area were normal police practices and precautions which did not invade any constitutional rights of defendant. State v. Bell, 89 N.J. Super. 437 (App. Div. 1965). See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Dilley, 49 N.J. 460 (1967); cf. State v. Sheffield, 62 N.J. 441 (1973); Pine v. Okzewski, 112 N.J.L. 429 (E. & A. 1933). But see Cannon v. Krakowitz, 54 N.J. Super. 93 (App. Div. 1959). In Bell the court cited Busby v. United States, 296 F.2d 328 (9 Cir.1961), cert. den. 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962), which contains language appropriate to the facts of this case:
* * * Considering the hour of the morning, the information received and all the surrounding circumstances, the officers were perfectly justified in making inquiries of the appellants and in asking them to step out of the automobile. These actions appear to have been proper police practice under the circumstances, and certainly this routine investigation did not constitute an arrest or search. (296 F.2d, at p. 331). [State v. Bell, supra, 89 N.J. Super. at 444]
Although the police may not have had a right to arrest defendant at the time the arrest was announced, they did have a right to detain for a brief and immediate investigation in the vicinity. The investigation resulted in finding the tampered vehicles which ultimately led to the plain view identification by the owner of her personal property in defendant's car. The identification of the property and its ultimate seizure were not based upon the questionable arrest. The owner's immediate recognition of the goods justified the warrantless seizure by the police. The items sought to be suppressed were in the owner's plain view, and there was no unlawful intrusion prohibited by *416 the Fourth Amendment. Harris v. United States, supra. See also, State v. O'Herron, 153 N.J. Super. 570, 575 (App. Div. 1977). Moreover, since we have determined that the action of the police officers did not constitute an illegal arrest, the evidence seized cannot be considered the fruit of illegal action by the police barred by the Wong Sun doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 403, 9 L.Ed.2d 441 (1963).
To summarize our position, we are satisfied that there was a valid search and seizure of the items found in defendant's motor vehicle. The validity of the seizure was not dependent upon a lawful arrest. The defendant's detention was fully warranted by his furtive action and that of his companion. The items were seized as a result of the owner's "plain view" observation of her property in defendant's vehicle following events which justified the arrest of defendant for the theft of that property.
The order suppressing evidence is reversed and the matter remanded to the trial court for further proceedings.