Phillip W. DOWNS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 19, 1989.
Decided: Jan. 11, 1990.
Rehearing Denied March 19, 1990.

Gary F. Traynor, Brown, Shiels & Chasanov, Dover, for appellant Phillip W. Downs.

Gary A. Myers, Dept. of Justice, Wilmington, for appellee State of Del.

Before HORSEY, MOORE and WALSH, JJ.

MOORE, Justice:

Phillip W. Downs ("Downs") appeals his convictions on charges of trafficking in cocaine and resisting arrest. The trial judge denied Downs' motion to suppress evidence that allegedly was obtained as a result of an unlawful arrest or detention. On appeal Downs contends that his initial detention was so coercive as to constitute an arrest which was not supported by probable cause, or alternatively, that an informant's anonymous tip which led the police to him did not establish a reasonable suspicion sufficient to justify an investigatory detention. We reject all of these contentions. The police conduct did not exceed the scope of an investigatory detention, and the entire record before the trial court establishes that the police had a reasonable suspicion that criminal activity was afoot sufficient to justify the detention. Accordingly, we affirm.

## I.

On October 4, 1988, an anonymous caller notified a secretary at the Smyrna Police Department that a car, identified as a "blue Z" was parked under a tree in McLane Gardens and contained a large amount of cash, drugs and weapons. The caller also stated that the occupants of the car were monitoring a police radio scanner so the police should not announce orders over their radios. That anonymous tip was the fourth call received by police within three weeks indicating that a blue Z car located at McLane Gardens was involved in drug dealing.[1] Moreover, in two of the three earlier calls, the informants had identified themselves by name.

The information obtained from the October 4 call was relayed to Corporal Weiss and Detective Fortner, both of whom had responded to previous calls. They decided to investigate, and consistent with the tip, discovered a blue Chevrolet Cavalier Z24 parked under a tree at McLane Gardens. They approached the vehicle but could not determine what its two occupants were doing because of its tinted windows. One of the officers drew his gun. They then displayed their badges and ordered the occupants out of the car. The driver complied, and as he left the vehicle, Detective Fortner told him that he had probable cause to believe that the driver had narcotics and was placing him under arrest.

The passenger, Downs, asked why he was being ordered out of the vehicle. The other officer responded: "Because I said you have to get out." Downs complied, and Officer Weiss ordered him to put his hands on top of the car. Instead, Downs fled on foot clutching a blue bag that he had grabbed from the car. Officer Weiss chased him for several minutes before recovering the blue bag and, with the help of other officers, catching Downs. The blue bag contained one large plastic bag with 38.5 grams of cocaine, seven smaller plastic bags with 6 grams of cocaine, a scale, two straws, and many unused plastic bags. In Downs' pockets, the police found two rolls of money totaling $2535 and a straw.

Before trial, Downs moved to suppress the evidence contained in the blue bag and in his pockets as fruits of an illegal initial seizure. The trial court denied the motion, noting that the police had reasonable suspicion to justify a brief detention of the occupants for investigation based solely on the confirmation of the information related in the October 4 call. Furthermore, the Court found that the police acted reasonably in drawing a weapon as part of the stop in light of the anonymous caller's information about weapons. To this we would also add the patent danger involved under such circumstances when the police must approach a vehicle with heavily tinted windows. In adopting the *Terry* standard of reasonable suspicion rather than the higher probable cause standard, the trial court noted that the police's conduct, not language, should be the point of reference. The Court found it to be "clear ... that when the defendant stepped out of the vehicle clutching his blue felt bag, the actions of [the police] were consistent with a detention for the purpose of checking him for weapons." *State v. Downs*, Del.Super., IK88–10–0030 —0034; IK88–12–0826, 0827, Steele, J., letter op. at 5, 1989 WL 25896 (March 16, 1989).

Significantly, because the trial court based its conclusions only on the fourth tip received by the police the Court did not decide whether the officers relied on the previous calls to support the stop.

The trial judge stated:

I find it unnecessary to conclude whether the officers in fact had no thought concerning the earlier calls before October 4, 1988. Their confirmation of the information contained in the call of October 4,

---

1. Although the tips all mentioned a blue Z car and drugs, there were differences among them. The first call specifically identified the driver as "Joe", although neither of the occupants seized in connection with this case were named Joe. The second call recited a license plate number—Delaware 28594. The third call gave a slightly different license plate number—Delaware 285958. Despite these differences, the calls related essentially the same information. Both the first and fourth calls mentioned the police scanner, and the second and third calls referred to roughly the same license plate number.

▬▬▬▬▬▬▬▬▬▬▬▬▬

1988, alone creates a reasonable articulable suspicion to restrain the vehicle and to question its occupants.

*Id.* at 6.

## II.

The jury found Downs guilty of trafficking in cocaine and resisting arrest. Downs now appeals those convictions. He contends that the trial court should have suppressed the evidence because the police had neither probable cause for arrest nor reasonable suspicion for a *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He maintains that the arrest, or in the alternative, the stop, was an unreasonable seizure in violation of the fourth amendment. According to Downs, the anonymous tip was only corroborated by innocent activity (a blue car under a tree) and failed to establish either probable cause for arrest or reasonable suspicion for the stop. Thus, the evidence seized should have been suppressed.

▬ The trial court's evaluation of whether the police had probable cause to arrest or reasonable suspicion to approach Downs is a mixed question of law and fact. To the extent it is legal, this Court must review the trial court's determinations for errors in formulating or applying legal precepts. To the extent the trial court's legal decision is based on its own factual findings, it is reviewable to determine whether there was sufficient evidence to support the findings, and to determine whether those findings were the result of a logical and orderly deductive process. *See du-Pont v. duPont,* Del.Supr., 216 A.2d 674, 680 (1966) ("We have the duty, not only to review the evidence in search of factual support for the findings below, but also for the purpose of testing the propriety of those findings."). *See also Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

▬ Neither party argues that the police had probable cause to arrest Downs. The

higher standard is implicated on appeal only because Downs contends that the police were required to have probable cause to arrest after making a statement at the scene, which he argues implied that he was under arrest and not free to go. Basically, the defendant argues that because another person at the scene was told that he was being arrested, an investigatory stop was transformed into an arrest, which was unlawful because it was not supported by probable cause. However, words cannot transform a mere "stop" into an "arrest." The focus is on what the police did rather than on what they said. 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 9.2(e), at 371–73 (2d ed. 1986) ("[I]f a seizure occurred which, for a certain period at least, was no more intrusive than is permitted under *Terry,* then it may properly be characterized as a stop for the duration (so as to be upheld even if probable cause was then lacking), despite the fact that the officer and suspect may have viewed it as an arrest from the outset.... Under this approach, if an officer tells a suspect that he is under arrest and then conducts the kind of weapons search which would pass muster under *Terry,* a later determination that there were not grounds for arrest should not render inadmissible the discovered weapon if there were in fact adequate grounds for a stop and frisk."). *See also State v. Walton,* 159 N.J.Super. 408, 388 A.2d 268, 271 (1978); *People v. Beall,* 42 Ill.App.3d 452, 355 N.E.2d 756, 760–61 (1976); *People v. Stevens,* 183 Colo. 399, 517 P.2d 1336, 1339 (1974). Here, as the trial court held, the police action in approaching the car and telling *the defendant* to get out was consistent with an investigatory stop, rather than an arrest.[2] To hold otherwise would only serve to penalize police because they uttered the word "arrest" prematurely in the heat of a potential armed confrontation.

---

2. More specifically, the trial court found, and we agree, that although the driver was told he was under arrest, the defendant was not told directly that he was being arrested. Because the defendant fled, no "investigation", *see* 11

*Del.C.* § 1902, took place. The defendant does not, and cannot, argue that the police did not have probable cause to arrest him after they eventually caught him.

■ Police have the authority to forcibly stop and detain a person if they have a reasonable suspicion that a vehicle or its occupants are subject to seizure for violation of law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) *aff'g* 382 A.2d 1359; *Coleman v. State*, Del.Supr., 562 A.2d 1171, 1174 (1989); *Minnick v. State*, Del.Supr., 541 A.2d 598 (1988) (ORDER); *State v. Deputy*, Del.Supr., 433 A.2d 1040, 1042–43 (1981), *appeal after remand*, Del.Supr., 500 A.2d 581 (1985), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987); 11 *Del.C.* § 1902. *See also Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. The quantum of evidence needed for a reasonable suspicion is less than that required for probable cause. A "reasonable suspicion" is often defined as an "officer's ability to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.' " *Coleman*, 562 A.2d at 1174 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879).

■ The question of whether the police had a reasonable suspicion to approach the car in which Downs was sitting is difficult in light of the narrow evidentiary basis upon which the trial court ruled. The trial judge relied only on the fourth and final call in concluding that the police had reasonable suspicion to conduct an investigatory stop. Superficially, it appears that the informant was anonymous, had no credibility and the information he or she provided was very generalized. *See Millwood v. State*, 72 Md.App., 82, 527 A.2d 803, 808 (1987) (confirmation of description of car and occupant does not rise to level of reasonable suspicion), *cert. denied*, 533 A.2d 1308 (1987), *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *see also Bromwell v. State*, Del.Supr., 427 A.2d 884, 888 (1981) (stop and frisk of "suspicious individual" wandering in rural neighborhood five miles from the scene of a very recent robbery pursuant to information provided by phone call from local resident was supported by a reasonable suspicion). *Cf. Dendy v. State*, Del.Supr., No. 479, 1988, —— A.2d —— Moore, J. (Dec. 27, 1989) (tip from reliable informant that defendant was involved in drug dealing *did* form basis for *probable cause to arrest* after it was corroborated by police); *Jacoby v. State*, Del.Supr., 571 A.2d 787 Moore, J. (1989) (corroborated anonymous tip in combination with other information known by police, constituted *probable cause to arrest*); *Tatman v. State*, Del.Supr., 494 A.2d 1249, 1251–52 (1985) (corroborated tip can form basis for *probable cause* even absent knowledge about informant's credibility). However, we need not decide whether the fourth call standing alone gave rise to a reasonable suspicion that the occupants of the blue Z24 were involved in criminal activity or otherwise subject to seizure.

The police clearly relied on the fact that this was the fourth tip in three weeks about a blue Z24 car dealing in drugs in McLane Gardens. Corporal Weiss testified as follows:

Q. Now, October 4, 1988, after you received that tip what did you do?

A. I received the information from Mrs. Carson and I walked down the hall to Sergeant, Detective Sergeant Fortner's office. He was seated at his desk and I relayed the information to him.

Q. What was the decision reached after you relayed that information?

A. *He told me that he had received prior tips and that he was going to investigate it.* He was going to personally go to check the tip out.

Transcript of Suppression Hearing Testimony at A–50 (emphasis added). The officers had discussed previous tips. Indeed, both of the officers had been involved in earlier investigations of the tips. It was this background that added credibility to the fourth tip. Because two of the previous tips were not anonymous, and the other contained highly specific information, the police already suspected that someone in a blue Z24 in McLane Gardens was involved in drug trafficking. This factual background provides corroboration to the fourth tip, justifying the conclusion that the police action taken in this case was based on reasonable suspicion.

### III.

To summarize, we conclude that the trial court's findings that the police had a reasonable articulable suspicion to restrain and question the occupants of the Z car were correct, however, basing this conclusion solely on the October 4 anonymous phone call was unnecessarily restrictive given the established record that the police officers knew of the previous tips. These broader factual grounds make it absolutely clear that the police had a reasonable articulable suspicion of criminal activity on the part of the occupants of the car. The judgment of the Superior Court is AFFIRMED.