# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NADINE ADELE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No.:  K21A-09-001 RLG |
| | ) | |
| PATRICK T. CLIFTON, | ) | |
| RENEE M. CLIFTON, and | ) | |
| KURT D. MAJKA, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

**Submitted:  July 27, 2022**
**Decided:  December 7, 2022**

*Upon Appellant's Appeal from a Decision of the*
*Court of Common Pleas – **REVERSED** and **REMANDED**.*

Nadine Adele, *Pro Se Appellant.*

Ronald G. Poliquin, Esquire, The Poliquin Firm, L.L.C., Dover, Delaware,
*Attorney for Appellees Patrick T. Clifton and Renee M. Clifton*

Kurt D. Majka, *Pro Se Defendant.*

**GREEN-STREETT, J.**

1

# I.    Introduction

At a base level, the Court must consider Appellant/Plaintiff-Below Nadine Adele's ("Appellant") appeal of the decision of the Court of Common Pleas granting Appellees/Defendants Patrick ("Appellee Patrick") and Renee ("Appellee Renee") Clifton's (collectively "Appellees") Amended Motion to Dismiss.[1]   At its core, however, this case contemplates the composition of a replevin action and the quantum of evidence necessary to support such a claim.  Upon consideration of the facts, arguments, and legal authorities set forth by the parties; statutory and decisional law; and the entire record in this case, the Court reverses and remands the decision of the Court of Common Pleas.

## II.  Factual and Procedural Background

### A. The Underlying Dispute

There exists a long and arduous history of litigation between the parties in this case.  However, the Court will recount only the disputes and corresponding proceedings that are relevant to the instant appeal.[2]  Appellant, Appellee Renee, and Defendant Kurt Majka ("Majka") are siblings.[3]  Appellee Patrick is Appellant's

---

[1] First names have been utilized in the pursuit of clarity. The Court intends no familiarity or disrespect.

[2] The record in the instant appeal is quite voluminous, and, at times, repetitive. In an effort to maintain consistency and clarity, the Court will refer to "Plaintiff's" motions as "Appellant's" motions, and "Defendants'" motions as "Appellees'" motions. Further, given the repetitive nature of many of the motions within the Record, the Court has provided filing dates when appropriate.

[3] Adele v. Clifton, 2021 WL 3910249, at *1 (Del. Com. Pl. Sept. 1, 2021).

brother-in-law and the husband of Appellee Renee.[4]  The dispute *sub judice* centers around a property located at 336 Fiddlers Green, Dover, Delaware 19904 ("Fiddlers Green").[5]  The property at Fiddlers Green is owned by Appellees, and was previously occupied by Appellant and her mother.[6]  Appellant's mother died in 2017.[7]

Appellant contends that, on or about October 17, 2017, Appellees and Majka removed her "personal property and business inventory" from Fiddlers Green without Appellant's permission.[8]  Appellant further avers that, on October 19, 2017, Appellees "unlawfully ousted" her from Fiddlers Green when they "changed the door locks, and took unlawful possession and control of her 157 personal and business property items."[9]  Appellant alleges that Appellees and Majka refused to return the property, despite repeated requests from Appellant that they do so.[10]

On January 11, 2019, Appellant filed a replevin action in the Court of Common Pleas (or "the lower court") against Appellees and Majka, seeking return

---

[4] Id.

[5] Appellant's Opening Br. 2.

[6] See Appellant's Opening Br. 5 (asserting that Appellant lived in the home at Fiddlers Green "as a legal tenant" until November 21, 2018).

[7] Appellees' Am. Mot. to Dismiss ¶ 19.

[8] Compl. ¶ 3, Jan. 11, 2019.

[9] Appellant's Opening Br. 5.

[10] Id.

of personal property and business inventory valued at $22,100.[11] Three days later, Appellant filed a second replevin action solely against Appellees for the return of property valued at $36,915.[12] Appellant contends that Appellees "continue[d] to refuse to allow [Appellant] to recover this property."[13]

After unsuccessfully moving to dismiss Appellant's claim for improper service, Appellees filed an Answer.[14] Therein, they contended that: (1) Appellant picked up her property from Fiddlers Green in November of 2017; and (2) all items remaining at Fiddlers Green were "subject to [Appellant's] mother's estate which [had] been resolved."[15] Appellees also asserted various affirmative defenses not relevant to the instant appeal.[16]

## B. Discovery

The discovery road in this case serpentines through multiple sets of interrogatories, requests for production, motions to compel, and motions to dismiss. This laborious journey commenced in June 2020 and ended in July 2021 with the dismissal of Appellant's case. Appellant filed her first request for interrogatories,

---

[11] Compl. ¶ 3, Jan. 11, 2019. This Complaint was filed under the case number CPU5-19-000043.

[12] Compl. ¶ 3, Jan. 14, 2019. This Complaint was filed under the case number CPU5-19-000042.

[13] Id.

[14] See generally Appellees' Answer, June 15, 2020.

[15] Id. ¶¶ 3-4.

[16] Id. "Affirmative Defenses."

consisting of 187 individual interrogatories, on June 16, 2020.[17]  Over the course of the next few months, Appellant filed, in various forms and for varied reasons, two Motions to Compel, two Requests for Sanctions, and "Supplements" to her various motions.[18]  Additionally, on October 8, 2020, Appellant filed a Motion for Rule to Show Cause for Appellee Renee's "Failure to Answer and Sign First Set of Interrogatories."[19]

In response to Appellant's numerous motions, Appellees filed a Motion for Protective Order on October 13, 2020.[20]  Appellees' Motion contended that Appellant's interrogatories were burdensome, repetitive, and unlikely to lead to the discovery of relevant evidence.[21]  Appellant responded with a Motion in Opposition, reiterating her argument that Appellee Renee "failed to answer the June 16, 2020[,] interrogatories with her signature, as ordered by the court.[22]

---

[17] Appellant's Mot. to Compel ¶ 1, July 27, 2020.

[18] See Id. See also Appellant's Req. for Sanctions – Supp. to Mot. to Compel Answers from Appellee Renee M. Clifton, Aug. 3, 2020 and Appellant's Second Supp. To Mot. To Compel Answers from Appellee Renee M. Clifton ¶¶ 8-10.

[19] Appellant's Mot. for Rule to Show Cause for Appellee Renee M. Clifton's Failure to Answer and Sign First Set of Interrogs., Oct. 8, 2020.

[20] See Appellees' Mot. for Protective Order, October 13, 2020.

[21] Id. ¶ 2.

[22] Appellant's Opp'n to Appellees' Mot. for Protective Order ¶ 1, October 20, 2020.

On November 3, 2020, Appellant filed Motions for Summary Judgment as to Appellee Renee, Appellee Patrick, and Majka.[23] Although addressed to each Appellee and Majka individually, the Motions raised the same arguments.[24] In each Motion, Appellant asserted that: (1) she had not received proper responses to her requests for admissions from either Appellees or Majka, and, therefore, pursuant to Court of Common Pleas Civil Rule 36(a), the requests should be deemed to have been admitted; (2) Appellees and Majka failed to dispute her claim to the property at Fiddlers Green; and (3) Appellees and Majka made no legal claim to the personal and business property listed in the petition.[25]

On November 9, 2020, the Court of Common Pleas held a pre-trial conference to address the parties' outstanding motions.[26] Both Appellant and Appellees' counsel confirmed that, as of the date of the conference, Appellees had responded to all of Appellant's discovery requests.[27] The Court of Common Pleas denied Appellant's Motions for Summary Judgment and granted Appellees' Motion for

---

[23] See Appellant's Mot. for Summ. J. Against Appellee Renee M. Clifton, Nov. 3, 2020. Appellant's Mot. for Summ. J. Against Appellee Patrick T. Clifton, Nov. 3, 2020. Appellant's Mot. for Summ. J. Against Def. Kurt D. Majka, Nov. 3, 2020 (collectively "Appellant's Mots. for Summ. J.").

[24] Id.

[25] Id. ¶¶ 2-8.

[26] See Pre-Trial Conference Tr., Nov. 9, 2020.

[27] Id. 10:3-12; 11:16.

6

Protective Order.[28]  In doing so, the Court of Common Pleas instructed Appellant that there would be "no further motions submitted in this matter."[29]

On November 24, 2020, Appellees filed their first set of interrogatories, requests for document production, and requests for admissions directed to Appellant.[30]  Appellant refused to answer, claiming "discovery [was] over" based on the pre-trial conference on November 9, 2020.[31]  Appellees filed a Motion to Compel Discovery.  Appellant responded by filing an Objection to the Motion to Compel, reasserting her belief that discovery had concluded.[32]

On March 23, 2021, the Court of Common Pleas granted Appellees' Motion to Compel, thereby ordering Appellant to: (1) provide the requisite discovery responses within fourteen days; and (2) pay Appellees' attorney's fees accrued in the preparation of the Motion to Compel.[33]  On March 31, 2021, Appellant filed a "Motion to Modify Court Order to 30 Day Response Deadlines for Appellees' Discovery Requests."[34]  On April 6, 2021, while still awaiting the lower court's

---

[28] Id. 15:8-10.

[29] Id. 15:11-12.

[30] See generally Appellees' Opening Br. Ex. 1.

[31] Appellant's Objection to Mot. to Compel Ex. A, Feb. 5, 2021.

[32] Appellees' Opening Br. Ex. 2; Appellant's Objection to Mot. to Compel, Feb. 5, 2021.

[33] Appellees' Opening Br. Ex. 5.

[34] Appellant's Mot. to Modify Court Order to 30 Day Response Deadlines, Mar. 31, 2021. Appellant's Opening Br. 10-11.

response to her Motion to Modify, Appellant filed responses to Appellees' discovery requests.[35] The Court of Common Pleas granted Appellant's modification request on April 8, 2021, requiring that Appellant submit her discovery responses by April 30, 2021.[36] Appellant filed additional responses to Appellees' interrogatories, requests for admissions, and requests for production of documents on April 30, 2021.[37]

On May 11, 2021, Appellees filed a Motion to Dismiss, asserting that: (1) Appellant failed to provide adequate discovery responses; and (2) Appellant's claim should be barred by the statute of limitations and laches doctrine.[38] Appellees averred that Appellant failed to provide straightforward information regarding: (1) detailed descriptions and serial numbers for the items for which she has requested return; (2) the basis of ownership for each item; and (3) a detailed description of how Appellant acquired possession of each item.[39] Instead, Appellant's discovery responses referenced: (1) a video from November 10, 2017, in which Appellant inspects Fiddlers Green and personal property located there; (2) a lease agreement

---

[35] Id. at 11.

[36] Id.

[37] Appellant's Opening Br. 12; Ex. F.

[38] Appellees' Mot. to Dismiss, "Plaintiff Have [sic] Failed to Respond Adequately to Discovery," ¶ 3; "Plaintiff's Claims are Barred by Laches and Title 12 of The Delaware Code," ¶ 17.

[39] Id. "Plaintiff Have [sic] Failed to Respond Adequately to Discovery," ¶ 3.

8

from March 1, 2012, regarding Fiddlers Green; (3) various documents related to Appellant's mother's Power of Attorney; (4) an affidavit of Eric Majka; and (5) a list of exhibits which provide generalized descriptions of certain items of property allegedly held at Fiddlers Green.[40] Further, Appellees averred, Appellant had not responded to a number of Appellees' discovery requests.[41]

With regard to their statute of limitations and laches argument, Appellees contended that the property as issue belonged to Appellant's mother, who died in October of 2017.[42] Appellees further posited that the property had been informally divided among the family members soon after her death.[43] Accordingly, Appellees argued that (1) the statute of limitations for disputing the division of the estate had expired under 12 Del. C. § 2102(b)(2); and (2) Appellant's claims for the property should be barred under the doctrine of laches.[44]

On May 21, 2021, Appellant filed a Motion in Opposition to Appellees' Motion to Dismiss.[45] Therein, Appellant argued that her discovery responses were

---

[40] Id. "Failure to Respond Adequately to Interrogatories."

[41] Id.

[42] Id. "Plaintiff's Claims are Barred by Laches and Title 12 of The Delaware Code" ¶ 1.

[43] Id. ¶ 7.

[44] Id. ¶¶ 9-17.

[45] See Appellant's Objection to Appellees' Mot. to Dismiss, May 21, 2021.

"more than adequate."[46]  The responses, she averred, were accompanied by "363 supporting marked-up Exhibits that were specifically labeled on a [c]ourt approved digital thumb-drive."[47]  Thus, Appellant reasoned, she "[had] adequately provided [Appellees] with photographic and documentary descriptions in response to [Appellees'] discovery requests."[48]  Further, Appellant contended that her claim was not time barred under 12 Del. C. § 2102(b)(2), given that she had "not filed a claim for any alleged estate property of [her mother], Adele J. Majka."[49]

A pre-trial conference was held on May 24, 2021, during which the Court of Common Pleas informed Appellant that a number of her answers to Appellees' discovery requests were non-responsive.[50] The lower court instructed Appellant to supplement her discovery responses by June 7, 2021.[51]  As instructed by the lower court, Appellant submitted supplemental responses to Appellees' discovery requests on June 7, 2021.[52]  Included with the supplemental responses was an exhibit titled

---

[46] Id. ¶ 4.

[47] Id. ¶ 5.

[48] Id.

[49] Id. ¶¶ 9-17.

[50] Appellees' Opening Br. Ex. 8.

[51] Id.

[52] Appellant's Opening Br. Ex. B at 13.

"Comprehensive Answer" (the "Exhibit").[53]  Within the Exhibit, Appellant asserted that her "personal property ownership documents, receipts, manuals, and serial numbers [for the disputed property] were housed in four stacked storage boxes in . . . the 336 Fiddlers Green home."[54]  Appellant averred that the Appellees had "unlawful possession" of the boxes of documents, and that she needed those documents to prove ownership of the disputed personal property.[55]

The Exhibit goes on to list nineteen "Categories of Basis of Ownership and How Plaintiff Acquired Possession of Each Item."[56]  The Exhibit then provides more than forty pages of photographic and written descriptions of the personal property items for which Appellant claimed proof of ownership was housed in the Fiddlers Green living room.[57]  In short, Appellant contended that Appellees unlawfully possessed the documentation that she needed in order to provide proof of ownership for the disputed personal property.[58]

---

[53] See Appellant's Opening Br. Ex G.

[54] Id.

[55] Id.

[56] Id.

[57] Id.

[58] Id.

11

Appellees filed an Amended Motion to Dismiss on June 15, 2021.[59]  The Amended Motion corrected pagination and numbering errors within the previous Motion, but otherwise asserted identical arguments.[60]  On June 21, 2021, the Court of Common Pleas held a hearing on the Amended Motion to Dismiss during which Appellant was instructed to file a response within fifteen days.[61]  On July 3, 2021, Appellant filed an Objection to Appellees' Amended Motion to Dismiss.[62]

## C. **The Lower Court's Dismissal**

On September 1, 2021, the Court of Common Pleas issued a Letter Decision on the Appellees' Amended Motion to Dismiss.[63]  The lower court summarized the factual and procedural posture of the case before ultimately granting the Amended Motion to Dismiss.[64]  The lower court based its decision to dismiss on Court of Common Pleas Civil Rule 37(b)(2)(C), which provides the court "authority to dismiss a party's case for failing to comply with a court order compelling discovery."[65]

---

[59] See Appellees' Am. Mot. to Dismiss.

[60] Id.

[61] Pretrial Conference Tr. 3:14-16, June 21, 2021.

[62] Appellant's Opening Br. Ex. B at 14; Appellees' Opening Br. Ex 10.

[63] See generally Adele, 2021 WL 39110249.

[64] Id. at *1-3.

[65] Id. at *3.

In considering the Appellees' Motion to Dismiss, the lower court weighed the six factors outlined in <u>Drejka v. Hitchens Tire Service Inc.</u>,[66] and ultimately found dismissal to be an appropriate sanction for Appellant's failure to respond adequately to the lower court's order compelling discovery.[67] In analyzing the <u>Drejka</u> factors, the lower court concluded that: (1) Appellant was "personally responsible for her failure to provide discovery," given that she proceeded *pro se* and had represented on numerous occasions that she understood her discovery obligations; (2) the Appellees were prejudiced given that Appellant's "repeated failure to respond to their discovery requests," had resulted in "needless expenses" and an inability to resolve the dispute in a timely manner; (3) Appellant demonstrated an "excessive history of dilatoriness," through her repeated failure to comply with discovery requests and court orders; (4) Appellant's conduct was "both willful and in bad faith," as evidenced by Appellant's "continuous and conscious disregard to follow [the] [c]ourt's [o]rders and [r]ules[;]" and "combative and disruptive" behavior during court proceedings;[68] (5) less severe sanctions, such as judicial warnings and monetary penalties, had proven ineffective; and (6) Appellant largely failed to substantiate her claim that Appellees wrongfully withheld her personal property and

---

[66] <u>Drejka v. Hitchens Tire Service, Inc.</u>, 15 A.3d 1221, 1224 (Del. 2010).

[67] <u>Id.</u> at *5.

[68] <u>Id.</u> at *4.

business inventory.[69] Given its disposition with regard to the <u>Drejka</u> factors, the court did not reach or analyze the issue of whether Appellant's claim should be time-barred under 12 <u>Del. C.</u> § 2102 or the doctrine of laches.[70] The instant appeal followed.

## III.   <u>Standard of Review</u>

When the Superior Court addresses an appeal from the Court of Common Pleas, it sits as an intermediate Appellate Court.[71] In doing so, the Superior Court is limited to: (1) correcting errors of law; and (2) reviewing the factual findings of the court below to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process.[72] Errors of law, which include "errors in formulating or applying legal principles," are reviewed *de novo*.[73]

## IV.   <u>Discussion</u>

At the heart of the instant matter is Appellant's attempt to reclaim property to which she asserts she has a lawful claim of ownership. However, the lower court's dismissal was not based on a finding that Appellant's claim was substantively

---

[69] Appellees' Answering Br. Ex. 11

[70] <u>Adele</u>, 2021 WL 3910249, at *5.

[71] <u>Coverdale v. Witcher</u>, 2022 WL 1438772, at *4 (Del. Super. May 4, 2022) (citing <u>State v. Richards</u>, 1998 WL 732960, at *1 (Del. Super. May 28, 1998)).

[72] <u>Coverdale</u>, 2022 WL 1438772, at *4.

[73] <u>Id.</u> at *4 (quoting <u>Downs v. State</u>, 570 A.2d 1142, 1144 (Del. 1990)).

14

lacking in merit. Rather, the lower court's dismissal stemmed from an alleged procedural shortcoming in Appellant's responses to Appellees' discovery requests. Simply put, the lower court determined that: (1) Appellant failed to comply with the court's order compelling discovery; and (2) Appellant's failure to comply warranted dismissal. Given these circumstances, this Court must begin its review with an analysis of both the existing legal standard germane to replevin actions and the standard to which Appellant was held.

## A. **Appellant's Replevin Action**

The claim underlying the instant appeal is an action for replevin. Replevin is an action for "the recovery of the possession of personal property which has been taken or withheld from the owner unlawfully."[74] In order to obtain relief through replevin, a plaintiff must "establish [that she has] a right to the immediate and exclusive possession of the item in controversy."[75] Thus, the inquiry that results from this standard is *how* a plaintiff must prove her right to the property that she seeks to replevy.

---

[74] Napier v. Roth, 2009 WL 2767402, at *10 (Del. Com. Pl. July 14, 2009) (quoting Gianakis v. Koss, 2003 WL 21481014, at *1 (Del. Super. Jan. 21, 2003)).

[75] Gianakis, 2003 WL 21481014, at *1.

Generally, assertions of ownership and estimates of property value may be established through the testimony of the property owner.[76] This general principle is premised on the presumption that property owners are in the best position to assert the value of their own goods.[77] This principle was demonstrated in Ausejo v. Delmarva Power and Light Co., in which the court found that the property owners' lay testimony regarding the diminution in their property's value established that the plaintiffs had suffered a cognizable harm.[78]

Further, in establishing ownership of property, a party is not limited to providing documentary proof of ownership in the form of receipts, certificates of title, or serial numbers.[79] Such evidence is not dispositive as to ownership. Rather, Delaware courts have considered other forms of evidence when deciding ownership, such as witness testimony, itemized inventories of property, photographs, and

---

[76] See Atwell v. RHIS, Inc., 2007 WL 625277, at *1 (Del. Super. Feb. 14, 2007) ("Generally the owner of personal property is usually permitted to state their estimate as to its value,"); Ausejo v. Delmarva Power and Light Co., 1999 WL 1847437, at *5-6 (Del. Com. Pl. Feb. 17, 1999) (permitting property owners to estimate the diminution in the value of their own property to show harm had occurred).

[77] Atwell, 2007 WL 625277, at *1 (citing Carello v. State of Delaware, 860 A.2d 809, 2004 WL 2520905, at *3 (Del. Nov. 1, 2004) (TABLE)).

[78] See Ausejo, 1999 WL 1847437, at *5-6.

[79] See generally Hitch v. Riggin, 80 A. 975, 976 (Del. Super. 1911) ("Property in a chattel, whether it be the property required to be proved by the plaintiff, or that which may be proved by the defendant, is established by direct evidence, when the case is susceptible of it, as by contracts of sale, admissions against interests, and the like, or by evidence of the acts and relation of the parties from which the property and the right of possession in one or the other may reasonably be inferred.").

16

documented communications between the parties involved in the dispute.[80]  This evidence may be used to raise an inference of ownership.[81]  For example, in Napier v. Roth, the court determined ownership and decided a claim for replevin after considering evidence such as: (1) testimony of witnesses at trial; (2) written communications between the parties; (3) itemized lists of the disputed property with accompanying receipts; and (3) photographs of the disputed property.[82]

Here, Appellant was held to a much higher standard.  Appellees' discovery requests sought, among other things, "detailed description[s]" and "serial numbers" for each piece of property for which Appellant sought return and a detailed description of how Appellant acquired possession of each piece of disputed property.[83]  The Record shows that Appellant attempted to respond to Appellees' discovery requests by submitting: (1) a video record in which the cameraperson conducts an inspection of Fiddlers Green and the property within it; (2) the sworn affidavit of Eric Majka, asserting that Appellant was the rightful owner of the property within Fiddlers Green; (3) a flash drive containing a list of exhibits

---

[80] See Napier, 2009 WL 2767402, at *1 n.1 (listing evidence used to determine ownership of property, which included, among other things, receipts, testimony, letters, photographs, and itemized inventories); See also Paul v. Sturevant, 2006 WL 1476888, at *1 (Del. Com. Pl. May 19, 2006) (establishing ownership through testimony of the plaintiff and her witness).

[81] Hitch, 80 A. at 976.

[82] Napier, 2009 WL 2767402, at *1 n.1.

[83] Appellees' Opening Br. Ex. 1 ¶¶ 4-6.

17

identifying each item of disputed property; and (4) a "Comprehensive Answer" to Appellees' discovery requests in which Appellant detailed nineteen categories of ownership, how each of the disputed property items was acquired, the method of ownership, and the value of each item of property.[84] Yet, despite Appellant's effort to respond as comprehensively as possible, the lower court concluded that production of these materials was an insufficient response to Appellees' discovery requests. Ultimately, Appellant's failure to provide receipts and serial numbers to establish ownership proved critical to the lower court's determination that Appellant was non-compliant with its discovery order.[85]

The discovery the lower court concluded Appellant was required to provide deviated from the standard of proof generally required by Delaware courts to establish property ownership. Even when Appellant offered various forms of evidence in an effort to establish ownership, her responses were deemed inadequate. There was a disconnect between the general standard of proof in a replevin action and the standard to which Appellant was held in the instant case to survive dismissal.

The lower court concluded that "through the discovery process, [the] [c]ourt and [Appellees'] counsel learned that [Appellant] would not be able to make out her

---

[84] See Appellant's Opening Br. 16-17.

[85] See Adele, 2021 WL 3910249, at *4 (holding that because Appellant repeatedly failed to provide receipts and serial numbers, as demanded by Appellees' discovery requests, the court had no other option but to dismiss the case).

18

claim for replevin," because "she did not have documentation, such as receipts, serial numbers, contracts[,] or manuals to prove ownership."[86]  Appellant eventually claimed that documentation establishing her ownership over the disputed property existed, but was being unlawfully withheld by the Appellees at Fiddlers Green.[87]

At the outset of the instant discussion, this Court outlined the type of evidence generally required of a plaintiff seeking to establish proof of ownership in a replevin action.  Although tangible documentation showing title may be persuasive, it is by no means dispositive.[88]  Rather, proof of ownership may be also established through testimony, photographs, inventories, and records of communications between the parties in dispute.[89]  Thus, unlike the court below, this Court finds that Appellant's inability to produce "serial numbers, receipts, contracts, or manuals," is not dispositive as to the merits of her claim for replevin.[90]

Further, the lower court discussed the possibility that the property Appellant seeks to replevy "did in fact belong to her mother."[91]  However, in this Court's

---

[86] Adele, 2021 WL 3910248, at *4.

[87] Id. at *5.

[88] Evans v. Perry, 2011 WL 3667394, at *3 (Del. Com. Pl. July 29, 2011) (citing Paul v. Sturevant, 2006 WL 1476888, at *1 (Del. Com. Pl. May 19, 2006)).

[89] Napier, 2009 WL 2767402 at *1 n.1.

[90] Adele, 2021 WL 3910248, at *4.

[91] Id. at *5.

review of the documentation provided by Appellant, there are number of items listed that do not appear to be related to Appellant's mother's estate.[92] Rather, these items are explicitly labeled as having been purchased by Appellant.[93]

Accordingly, the Court finds that the lower court erred, as a matter of law, in its application of the legal and evidentiary standard for replevin. Appellant presented enough evidence through discovery for her replevin action to survive dismissal. While this Court tenders no commentary on the ultimate dispositional merit of Appellant's case, her discovery submissions should not constitute a procedural roadblock to her proverbial day in court.

## B. <u>Appropriateness of Dismissal</u>

Given the error of law underlying and informing the lower court's dismissal of Appellant's replevin claim, this Court will not address any analysis of the <u>Drejka</u> factors. Further, given that the lower court dismissed Appellant's claim on the basis of its <u>Drejka</u> factor analysis, it did not reach the issue of whether Appellant's claim should be barred under 12 <u>Del. C.</u> § 2102 or the doctrine of laches. Thus, it would be improper for this Court to propound any legal analysis with regard to those arguments. Under these circumstances, the Court remands the instant dispute back

---

[92] Appellant's Opening Br. Ex G.

[93] <u>See</u>, <u>e.g.</u>, <u>id.</u> at 2 ("Basis of Ownership – Purchased by [Appellant] in the 2000's – value of $175.").

to the lower court for further consideration of Appellees' § 2102 and laches arguments.

## V.   Conclusion

For the foregoing reasons, upon careful and *de novo* review, the lower court's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge