IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAQUAN WOMACK, | § | |
| | § | No. 223, 2022 |
| Defendant Below, Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | I.D. No. 2006006269 (N) |
| | § | |
| Appellee. | § | |

Submitted: February 22, 2023
Decided: April 24, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware for Appellant.

Sean P. Lugg, Esquire, Delaware Department of Justice, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

*INTRODUCTION*

This is an appeal of a September 29, 2021, oral ruling by the Superior Court denying a motion to suppress evidence by Raquan Womack ("Womack"). A grand jury indicted Womack on five counts: (1) Possession or Control of a Firearm by a Person Prohibited ("PFBPP"), (2) Possession or Control of Ammunition by a Person Prohibited ("PABPP"), (3) Carrying a Concealed Deadly Weapon ("CCDW"), (4) Resisting Arrest, and (5) Possession of Marijuana.[1] Following a three-day jury trial, the jury returned guilty verdicts on all counts except the marijuana charge.[2]

Womack was sentenced to 20 years at Level 5, suspended after five years with decreasing levels of probation.[3] Before his trial commenced, Womack moved to suppress the evidence seized during his arrest in light of this Court's decision in *Juliano v. State*.[4] The trial court denied Womack's motion.

Womack appeals the denial of his motion to suppress evidence, which forms the sole basis of this appeal. He argues that the Superior Court erred because there was no justification for his detention beyond that of a routine traffic stop and because there was no probable cause for his arrest.

---

[1] *See* A7–9 (Indictment). As to Possession of Marijuana, the indictment charged that Womack "did knowingly possess less than one ounce, a personal use quantity, of marijuana, a controlled substance as described and classified in 16 Del. Code §§ 4701(26) and 4714(d)(19)." A9.

[2] *See* A4 (Del. Super. Docket).

[3] *See* Opening Br. at Exhibit B (Sentencing Order).

[4] 260 A.3d 619 (Del. 2021).

Womack's claim lacks merit. Upon seeing a vehicle with its underbody parts dragging on the road, the police stopped the vehicle. Womack — the vehicle's front seat passenger — was asked to step out as the officers conducted their stop. Upon detecting an odor of marijuana on the driver, the officers searched the vehicle and discovered marijuana. They then attempted to detain Womack in handcuffs for the duration of their search. He fled before the officers could handcuff him. During his flight, Womack discarded a backpack that had been on the front floorboard in the vehicle. The police recovered the bag. Inside they found a loaded firearm along with a pay stub as well as credit and debit cards bearing Womack's name. Because the officers complied with the constitutional requirements for the detention and subsequent arrest of Womack, we AFFIRM the Superior Court's denial of Womack's motion to suppress.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[5]

### A. The Police Stop and Search of the Vehicle

On the evening of June 15, 2020, officers from the New Castle County Police Department ("NCCPD") performed a traffic stop in Wilmington, Delaware.[6] The vehicle in question "had an unknown vehicle part dragging from the undercarriage of the vehicle and it was dragging and it was grinding on the pavement."[7] Dellinel Jimenez ("Jimenez")

---

[5] The facts, except as otherwise noted, are taken from the transcript of the suppression hearing, and the court's oral ruling denying the motion to suppress. *See* A33–53 (Superior Court Transcript) [hereinafter Trans. at _].

[6] The traffic stop occurred at "approximately 8 p.m." A41 (Drew Hunt Testimony at 50:8) [hereinafter Hunt Test. at _].

[7] A35 (Hunt Test. at 28:5–7).

and Womack were inside the vehicle, and "both were smoking cigarettes."[8]   After identifying both men, Officer Drew Hunt ("Officer Hunt") asked Jimenez, the driver, to step out of the vehicle.  Officer Hunt learned that Jimenez had a few capiases for his arrest.  According to Officer Hunt, Jimenez "appeared nervous" and had "really glassy" eyes and had an odor of "marijuana on his person."[9]   Womack, by contrast, did not smell of marijuana.

Officer Hunt then arrested Jimenez, who was placed in handcuffs and into a police cruiser.  Meanwhile, another officer, Officer Webb, asked Womack to step out of the vehicle due to "officer safety."[10]   At this point, Womack was detained.  According to Officer Hunt, Womack "was not free to go, but he was not arrested at that point."[11]   Officer Webb informed Womack that he would be free to go in a few minutes, once the officers determined whether Womack could take Jimenez's car following Jimenez's arrest.[12]   During this conversation, Womack was permitted to reenter the vehicle.[13]   Officer Hunt testified that he "preferred [Womack] stayed out of the vehicle, but Officer Webb told him

---

[8] *Id.* (Hunt Test. at 28:16).

[9] A36 (Hunt Test. at 29:22–30:8).

[10] *Id.* (Hunt Test. at 31:4).

[11] *Id.* (Hunt Test. at 31:12–13).

[12] *See id.* (Hunt Test. at 32:10–17).  Officer Hunt testified that the officers let Womack reenter the vehicle because they "were trying to determine whether or not [Womack] would be free to leave at some point soon, if he could take the vehicle for [Jimenez]." *Id.* (Hunt Test. at 32:10–12).

[13] *See id.* (Hunt Test. at 32:8).  Officer Hunt testified that "Officer Webb at one point said that [Womack would] be out of here in a few minutes, something along those lines, you'd be free to go." *Id.* (Hunt Test. at 32:15–17).

he could have a seat back in the vehicle."[14]

Because of the odor of marijuana coming from Jimenez, Officer Webb conducted a search of the vehicle. Womack was asked for a second time to step out of the vehicle as the search commenced, and this time Womack stood with Officer Canaan about five to ten feet away from the vehicle. Womack, again, was detained, but this time, he had with him a white Michael Kors backpack on his back.[15] Roughly 30 seconds into his search of the vehicle, Officer Webb "found approximately two and a half grams of marijuana near the driver's seat of the vehicle."[16]

Officer Webb informed Officer Canaan — who was standing outside the vehicle with Womack — that he found marijuana. Officer Canaan then attempted to place Womack in handcuffs,[17] but Womack "pulled away [and] ran on foot."[18] A chase ensued, lasting two minutes until the officers apprehended Womack and took him into custody. When he first fled, Womack had the white backpack with him, but by the time he was apprehended, he no longer had it. Officer Hunt estimated that the entire encounter, "from

---

[14] A42 (Hunt Test. at 53:10–12). This occurred shortly after the officers arrested Jimenez and placed Jimenez in the police cruiser. *See id.* (Hunt Test. at 53:16–17).

[15] *See* A37 (Hunt Test. at 36:12–13). The backpack remained inside the vehicle when Womack first stepped out. *See* A42 (Hunt Test. at 56:14–16).

[16] A37 (Hunt Test. at 35:1–2).

[17] Officer Canaan "self-initiated" his attempt to place Womack in handcuffs — Officer Webb did not instruct him to do so. A39 (Hunt Test. at 42:19). Officer Hunt testified that officers use handcuffs so "[t]here's no interference with them while we're searching the vehicle. We don't have to worry about them and what they're doing with them in the patrol car while we're searching the vehicle." A38 (Hunt Test. at 37:22–38:2).

[18] A37 (Hunt Test. at 36:1).

the beginning of this traffic stop until Mr. Womack ran," was "probably fifteen minutes."[19]

The NCCPD officers recovered the backpack and searched it, finding "a loaded .38 Special Smith & Wesson revolver[,] a pay stub belonging to Raquan Womack, [and] credit and debit cards belonging to Raquan Womack."[20] Once the officers apprehended Womack, they arrested him. Officer Hunt testified that Womack was arrested "after the foot pursuit when he was on the ground[.]"[21] At no point during the traffic stop did any NCCPD officer conduct a pat down of Womack.

### B. The Proceedings in Superior Court

#### 1. The Motion to Suppress

Following Womack's indictment by a New Castle County grand jury on September 8, 2020, Womack's counsel filed a Motion to File Out of Time and a Motion to Suppress on September 27, 2021. Womack based his Motion to Suppress on this Court's decision in *Juliano v. State*.[22] In the Motion to Suppress, Womack argued:

> Officers attempted to arrest defendant based solely on the marijuana. Here, the officer's entire basis to detain defendant Raquan Womack was predicated on the odor and discovery of marijuana by officers during this traffic stop. Thus all evidence arising from the encounter must be suppressed as fruit of the poisonous tree.[23]

---

[19] A38 (Hunt Test. at 40:10–12).

[20] *Id.* (Hunt Test. at 37:5–8).

[21] *Id.* (Hunt Test. at 37:11–13).

[22] *See Juliano*, 260 A.3d at 622.

[23] A12 (Motion to Suppress).

Before empaneling a jury, the Superior Court heard oral argument on the Motion to Suppress. Officer Hunt testified as the sole witness. At oral argument before the trial court, Womack argued:

> [T]here is nothing criminal on Mr. Womack's part for the entire detention. There was nothing criminal on his part. They put cuffs on him. If he's free to go, he's free to go. Clearly he's not. Custody is the key issue here. Do we have custody first? That's a question. Do we have a basis for custody? We don't. There's no reasonable suspicion here as to Mr. Womack. He's done nothing. There's no fact as to Mr. Womack. It's the marijuana under the driver's seat with a detained driver on a suspicion of marijuana and capiases.[24]

The State responded to Womack's contention that the odor of marijuana formed the basis for Womack's arrest. Specifically, the State argued that Womack was not arrested until after he fled:

> There was not an arrest until much later. When [Womack] was detained, the officers were not empowered to do a pat down. They were not empowered to do a search incident to arrest because he was never arrested. He was arrested much, much later when he resisted being detained and fled from the officers. And the officers had to pursue him. That's when he was arrested. That's when we have probable cause to arrest him.[25]

The trial court took the argument under advisement and stated that it would issue its ruling on the Motion to Suppress before trial commenced.

2. *The Trial Court's Ruling and the Jury's Verdict*

The next day, before empaneling the jury, the trial court issued a bench ruling on the Motion to Suppress. The court denied the motion and found "that the State has met its

---

[24] A44 (Trans. at 62:6–16).

[25] A49 (Trans. at 81:12–19).

burden by a preponderance of the evidence to establish that the conduct of the officers was lawful."[26] The trial judge explained the differences between the facts in *Juliano* and the traffic stop at issue here:

> And upon searching the vehicle, unlike *Juliano*, now the discovery of contraband yields a different response from law enforcement. So no longer is the odor of marijuana the sole factor being considered but rather officer discovery of the contraband. And albeit a small amount of 2.55 grams, the officers were within their authority to conduct the search of the vehicle and that for officer safety now [Womack] was going to be handcuffed.[27]

Noting that this was a valid traffic stop, the court examined whether the scope and the duration of the detention were related to the initial justification for the stop. The court first found that Jimenez "presented nervously with glassy eyes and admitted the odor of marijuana, [thus] there was no dispute here that Mr. Jimenez's arrest was lawful and, accordingly the officers, were lawfully conducting a search when they decided to search Mr. Jimenez's vehicle."[28]

The trial court next considered Womack's status during the stop. Officer Hunt testified that Womack "was very nervous, taking shallow breaths, and speaking slowly."[29] As the court found, "at the time when the presence of marijuana was relevant, the officers' investigation, [Womack] was not under arrest but rather legally detained because he was a passenger in the vehicle with Jimenez known to police with outstanding capiases who were

---

[26] A51 (Trans. at 6:17–19).

[27] A52 (Trans. at 11:14–22).

[28] *Id.* (Trans. at 11:2–7).

[29] A51 (Trans. at 7:16–17).

conducting the legal arrest of Mr. Jimenez."[30]  Womack's flight from the scene, however, was a critical factor in the trial court's analysis of the evolving situation.  The trial court stated that "[t]his intervening act by [Womack] is important [and that] [u]p until then the detention of [Womack] was lawful and it was not extended beyond the time reasonably necessary to effectuate the purpose of the stop, which was to arrest Mr. Jimenez and conduct a search of the vehicle."[31]

The trial court then found that Womack "made the decision to run and the officers now had probable cause to arrest for his resistance to a lawful detention."[32]  The court found *Juliano* to be "narrow" and inapplicable because that case "involved evidence obtained incident to an arrest" and "was based solely on probable cause established only by the odor of marijuana."[33]  According to the trial court, Womack's flight, which impeded the officer's ability to handcuff him, by contrast, was an intervening act justifying his arrest and the subsequent search of the backpack.

### C. Womack's Contention on Appeal

Womack's sole contention on appeal is that the trial court erred in denying the

---

[30] A52 (Trans. at 11:8–14).

[31] *Id.* (Trans. at 12:5–10).  The court found that Womack had been "detained for fifteen minutes." A53 (Trans. at 13:11–12).

[32] *Id.* (Trans. at 13:22–14:2).

[33] *Id.* (Trans. at 14:7–9).  *See also Valentine v. State*, 207 A.3d 166, 2019 WL 1178765, at *2 (Del. Mar. 12, 2019) (ORDER) (observing that "[m]arijuana was, and remains, contraband subject to forfeiture[,]" that "[u]se or consumption of marijuana in a moving vehicle is a misdemeanor[,]" and "[t]hat possession of personal uses of marijuana is not a criminal offense does not render marijuana odors, raw or burnt, irrelevant to determinations of probable cause.") (internal citations omitted).

9

Motion to Suppress because his detention continued beyond the scope of the justification for the initial stop, was not based on any individualized suspicion, and was improperly continued during an investigatory search of the vehicle resulting from the odor of marijuana emanating from Jimenez. He argues that his detention ripened into an arrest when police attempted to handcuff him. He claims that his arrest was unlawful because there was no probable cause to support it. The State maintains that Womack's continued detention during the search of Jimenez's car was lawful and that, when contraband was found within the vehicle, investigators were authorized to secure Womack by handcuffing him.

## II.    STANDARD OF REVIEW

"This Court reviews a trial court's 'denial of a motion to suppress after an evidentiary hearing for [an] abuse of discretion.'"[34] "We consider legal questions *de novo* and will uphold a trial court's factual findings unless they are clearly erroneous."[35]

## III.    ANALYSIS

Based upon the parties' positions, we consider the narrow question of whether Womack's detention ripened into an arrest when the officer attempted to handcuff him. In Delaware, both the Fourth Amendment to the U.S. Constitution and Article I, § 6 of the Delaware Constitution protect individuals from unreasonable searches and seizures. Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses,

---

[34] *Lloyd v. State*, --- A.3d ---, 2023 WL 1830811, at *3 (Del. Feb. 9, 2023) (quoting *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010)).

[35] *Id.* (internal citation omitted).

10

papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[36]

Article I, § 6 provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures[.]"[37]

Womack agrees that the NCCPD officers were justified in stopping Jimenez's vehicle, and that they had probable cause to search the vehicle.[38] Womack also agrees that the officers were entitled to detain him initially when Jimenez was arrested. Thus, our analysis centers on the duration and scope of Womack's detention by the officers.

Womack argues that "Officer Canaan transformed the detention into an arrest requiring probable cause when he began to handcuff Womack."[39] And because the arrest lacked probable cause, according to Womack, the contents of the backpack should have been suppressed as fruits of the poisonous tree. However, we reject Womack's contention

---

[36] U.S. Const. amend. IV.

[37] Del. Const. art. I, § 6. Apart from a cursory citation to Article I, § 6 in his table of authorities, Womack does not specifically brief an argument under the Delaware Constitution or indicate why the outcome would be different under the Delaware Constitution as opposed to the Fourth Amendment. As we recently confirmed, "[s]ummary arguments unsupported by legal argument, analysis, and authority are waived." *Thomas v. State*, --- A.3d ---, 2023 WL 2058568, at *2 (Del. Feb. 17, 2023) (noting that appellant "did not offer any argument on appeal to support his state constitutional claims.") (internal citation omitted). "[T]he proper presentation of an alleged violation of the Delaware Constitution should include a discussion and analysis of one or more of the following criteria: textual language, legislative history, pre-existing state law, structural differences, matters of particular state interest or local concern, state traditions, and public attitudes or other applicable criteria." *Lloyd*, 2023 WL 1830811, at *8 n.48 (citing *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005), *overruled on other grounds by Rauf v. State*, 145 A.3d 430 (Del. 2016)).

[38] *See Holden v. State*, 23 A.3d 843, 847 (Del. 2011) ("A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver.") (internal citation omitted). Womack notes in his brief that he "does not dispute the authority to search the vehicle." Reply Br. at 2 n.5.

[39] Opening Br. at 12.

11

that he was arrested at that point. Instead, we hold that the Superior Court properly determined that the attempts to handcuff Womack were attempts to detain him in order to control the evolving scene.

"Police may stop and detain a motorist whom they reasonably suspect of criminal activity, which includes violation of our traffic laws."[40] Under Section 1902(c) of Delaware's criminal code, this type of investigative detention "shall not exceed 2 hours . . . [and] is not an arrest[.]"[41] "In this Court's words, an investigative detention 'must be justified at its inception by reasonable suspicion of criminal activity as defined in *Terry v. Ohio*.'"[42]

"Under the Fourth Amendment, a traffic stop is a seizure of a vehicle and its occupants by the State."[43] "The duration and execution of a traffic stop is necessarily limited by the initial purpose of the stop."[44] Further, "any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a

---

[40] *Houston v. State*, 251 A.3d 102, 108–09 (Del. 2021) (internal citations omitted). Further, "[a] police officer may not conduct a pat down search of a person during a traffic stop unless the officer has reasonable suspicion that the person subject to the frisk is armed and dangerous." *Holden*, 23 A.3d at 847 (citing *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). As noted above, the officers did not conduct a pat down of Womack.

[41] 11 *Del. C.* § 1902(c). By comparison, under our law, an arrest "is the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime." 11 *Del. C.* § 1901.

[42] *Diggs v. State*, 257 A.3d 993, 1004 (Del. 2021) (quoting *Caldwell v. State*, 780 A.2d 1037, 1046 (Del. 2001)).

[43] *Caldwell*, 780 A.2d at 1045.

[44] *Id.* at 1047 (internal citations omitted).

separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[45]

"During a lawful traffic stop, a police officer may order both the driver and passengers out of the vehicle pending completion of the traffic stop."[46] It is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest or investigation will not let people move around in ways that could jeopardize his safety."[47] This makes sense because "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."[48] If the circumstances of the detention or investigation warrant, the officers may use handcuffs to maintain command of the situation.[49]

Our conclusion that Womack's detention was not converted into an arrest when the officer attempted to handcuff Womack is dependent on the totality of the circumstances and takes account of the traffic stop's evolving nature.[50] We have observed that an

---

[45] *Id.*

[46] *Holden*, 23 A.3d at 847 (internal citation omitted).

[47] *Brendlin v. California*, 551 U.S. 249, 258 (2007) (internal citation omitted).

[48] *Id.* (internal quotation marks omitted).

[49] *Flowers v. State*, 195 A.3d 18, 29 (Del. 2018) (stating that the use of guns and handcuffs during an investigatory stop must be justified, and courts are required to look at the intrusiveness of all aspects of the incident in the aggregate) (internal citations omitted).

[50] We note that several of our sister federal appellate courts have held that handcuffing a suspect does not automatically convert a detention into an arrest. For example, in *United States v. Pace*, the United States Court of Appeals for the Seventh Circuit recently reaffirmed that it has been unwilling to hold that handcuffing a suspect without probable cause to arrest is unlawful *per se*. *See* 48 F.4th 741, 750 (7th Cir. 2022). There, the court held that the officer's concern for his safety justified handcuffing a suspect and that, in doing so, the detention was not converted into a full arrest. *Id.* at 751. The First Circuit has also held that "officers are permitted to use handcuffs to protect themselves and others" without converting a detention into an arrest. *United States v.*

investigatory "stop does not turn into a full arrest merely because the officers use handcuffs[.]"[51] However, an investigatory stop "may ripen into an arrest if the duration of the stop or the amount of force used in the situation is unreasonable."[52] We decline to set forth a bright line rule into when officers are justified in handcuffing an occupant of a vehicle during a valid traffic stop. Rather, the decision to handcuff a passenger who, at that point, is suspected of no crime, depends upon the totality of the circumstances which can rapidly evolve.[53] Further, "when determining whether a police officer has the requisite

---

*Mohamed*, 630 F.3d 1, 6 (1st Cir. 2010) (stating that "[a]lthough handcuffs are traditionally associated with an arrest, the use of handcuffs during an investigatory stop does not convert the stop into an arrest as long as the officers involved reasonably believed handcuffs were necessary to protect themselves or others under the circumstances that existed.") (internal citation omitted). The Fourth Circuit and the Eighth Circuit have held the same, as well. *See, e.g.*, *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003) ("the use of handcuffs did not convert the encounter into a custodial arrest because the use was reasonably necessary to protect the officer's safety."); *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) ("This court has previously held that the use of handcuffs can be a reasonable precaution during a *Terry* stop to protect [officer] safety and maintain the status quo.") (internal citations omitted); *see also United States v. Bautista*, 684 F.2d 1286, 1289–90 (9th Cir. 1982). Likewise, several of our sister state Supreme Courts have held the same. *See, e.g.*, *Chase v. State*, 144 A.3d 630, 646–47 (Md. 2016) ("the use of handcuffs *per se* does not ordinarily transform a *Terry* stop into an arrest."); *State v. Wells*, 859 N.W.2d 316, 328 (Neb. 2015) (concluding that the officer's decision to gain control of the detained suspect's arm and handcuff him while the officer conducted his investigation was a reasonable precaution to protect officer safety and maintain the status quo); *State v. Apalakis*, 797 A.2d 440, 445–46 (R.I. 2002) (observing that "[s]tanding alone, the use of handcuffs does not necessarily turn an encounter into an arrest for which probable cause is required.") (internal quotation marks and citations omitted).

[51] *Flowers*, 195 A.3d at 25 (internal quotation marks and citations omitted). *See also State v. Murray*, 213 A.3d 571, 578 (Del. 2019) (quoting *Flowers*, 195 A.3d at 25).

[52] *Flowers*, 195 A.3d at 25 (internal quotation marks and citation omitted).

[53] *See id.* at 29 (observing that "[t]he United States Supreme Court has cautioned that 'the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'") (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

level of suspicion to justify a detention or arrest, the expertise and experience of the officer are to be taken into account."[54] "[O]fficers may take measures that are reasonably necessary to protect themselves and maintain the status quo."[55] However, officers should use the least intrusive means of detention reasonably necessary to achieve the purpose of the detention.[56]

Here, the traffic stop occurred in the evening hours at around 8:00 p.m. After identifying the driver,[57] the officers discovered that he had capiases, prompting them to arrest Jimenez and then search the vehicle. The officers then found marijuana in the vehicle. The State does not contest Womack's assertion that the discovery of personal use marijuana under the driver's seat did not provide probable cause to arrest Womack.[58] However, that fact did alter the investigative landscape. The State argues that it was reasonable to believe that additional evidence might be found and that it was reasonable

---

[54] *Houston*, 251 A.3d at 114 (internal citation omitted). "This frequently comes into play when an officer relies upon his sense of smell in suspecting that an illegal substance is present." *Id.* (internal citation omitted). *See also Diggs*, 257 A.3d at 1004 ("A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.") (internal quotation marks and citation omitted).

[55] *Flowers*, 195 A.3d at 28 (internal quotation marks and citations omitted).

[56] *See id.* at 25 ("An unreasonably intrusive stop may constitute a *de facto* arrest requiring probable cause.") (internal citation omitted).

[57] *See, e.g.*, 11 *Del. C.* § 1902(a) ("A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.").

[58] *See* Answering Br. at 13.

for Officer Canaan to better secure Womack, who remained detained as the search of the vehicle continued. We agree.

Officer Hunt testified that he would have handcuffed Womack from the start of the detention, but that Officer Canaan, in his discretion, did not attempt to handcuff Womack until Officer Webb discovered marijuana near the driver's seat.[59] The situation evolved further when marijuana was discovered in the vehicle, which prompted the attempted use of handcuffs. At that time, only one officer stood with Womack. As Officer Canaan attempted to handcuff Womack, Womack fled, leading to a two-minute chase. It was only after the officers apprehended Womack that Womack's detention ripened into an arrest. Under the circumstances here, the use of handcuffs did not transform Womack's detention into an arrest.[60] Rather, Womack's flight, after the officer's attempt to handcuff him, was the point at which Womack's detention ripened into probable cause for arrest.[61]

We confronted a similar set of facts in our 1990 decision in *Downs v. State*.[62] There, officers approached a vehicle occupied by two people. They ordered both out of the car. The officers informed the driver that they had probable cause to believe that the driver had narcotics and was placing him under arrest. Passenger Downs asked why he was being ordered out of the vehicle. Downs complied, and he was then ordered to put his hands on top of the car. But rather than comply with that order, Downs "fled on foot clutching a

---

[59] *See* A39 (Hunt Test. at 42:14–21); A43 (Hunt Test. at 58:14–17).

[60] *See, e.g.*, *Martinez*, 462 F.3d at 907 (holding that use of "handcuffs was a reasonable response to the situation in order to protect the officers' personal safety and to maintain the status quo.").

[61] *See, e.g.*, *McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002).

[62] 570 A.2d 1142 (Del. 1990).

blue bag that he had grabbed from the car."[63] Officers eventually caught Downs, arrested

him, and recovered the bag, which contained — among other paraphernalia — cocaine.

Like Womack, Downs moved to suppress the evidence contained in the blue bag as

fruits of an illegal initial seizure. According to this Court, Downs argued "that because

another person at the scene was told that he was being arrested, an investigatory stop was

transformed into an arrest, which was unlawful because it was not supported by probable

cause."[64] Although the driver was told he was under arrest, Downs was not told that he

was under arrest. We noted in *Downs* that Downs did not, and could not, argue that the

police did not have probable cause to arrest him after they eventually caught him.[65]

Like Womack, Downs fled from the police with the bag, before ultimately being

arrested and the bag being recovered. And as in Womack's case, the trial court in *Downs*

denied the motion to suppress, "noting that the police had reasonable suspicion to justify a

brief detention of the occupants[.]"[66] We affirmed on appeal. When confronted with

*Downs* at oral argument, Womack's counsel attempted to distinguish *Downs* on the basis

that while Downs had fled when initially confronted with the police, Womack complied

---

[63] *Id.* at 1143.

[64] *Id.* at 1144.

[65] As we noted in *Downs*:

> More specifically, the trial court found, and we agree, that although the driver was told he was under arrest, the defendant was not told directly that he was being arrested. Because the defendant fled, no "investigation," *see* 11 *Del.C.* § 1902, took place. The defendant does not, and cannot, argue that the police did not have probable cause to arrest him after they eventually caught him.

*Id.* at 1144 n.2.

[66] *Id.* at 1143.

initially.[67]  Although that fact is true, we, nevertheless, see *Downs* as strongly supporting the State's position here.

Downs fled from police and held a bag during his flight.  That bag was searched, and its contents formed the basis for his prosecution.  Womack also fled from police and held a bag during his flight, which he discarded and police recovered, and its contents formed the basis for his prosecution.[68]  The trial court below found that Womack's flight was an intervening act that came about when the officers attempted to handcuff him.  We agree.  Under Delaware law, Womack's flight, as the officer attempted to handcuff him, constituted resisting arrest and is a class A misdemeanor: "[a] person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or *intentionally flees from a police officer who is effecting an arrest or detention of the person*."[69]  Because Womack's flight during the officer's attempt to handcuff him created probable cause, his arrest thereafter was constitutionally valid.

---

[67] *See* Oral Argument, at 12:25–14:51, https://livestream.com/accounts/5969852/events/10726676/videos/235146386.

[68] *See, e.g.*, *United States v. Barber*, 777 F.3d 1303, 1305–06 (11th Cir. 2015) (holding that the search of a bag recovered in vehicle was permissible when no individual claimed ownership of it); *Jackson v. State*, 990 A.2d 1281, 1289 (Del. 2009) ("Property discarded by a suspect who refuses to submit to an officer's authority and flees is deemed abandoned.") (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991)).

[69] 11 *Del. C.* § 1257(b) (emphasis added).

18

Once Womack was validly arrested, the officers were entitled to search him.[70] The trial court observed that Womack "is not seeking to suppress the evidence that was found on his person or in the vehicle" and that "[i]nstead, he wishes to suppress the evidence of the firearm found in a bag on the property which he has no nexus."[71] Although the trial court raised the issue of Womack's standing to challenge the search of the bag that he had discarded, it observed that the State did not challenge Womack's standing regarding the search of the bag.[72] We agree with the State that the subsequent search of the bag, which Womack discarded, was permissible following Womack's arrest which only occurred after he fled and after there was probable cause for his arrest.[73]

---

[70] *See Coley v. State*, 886 A.2d 1277, 2005 WL 2679329, at *1 (Del. Oct. 18, 2005) (ORDER) ("A search incident to an arrest is a recognized exception" to the Fourth Amendment's warrant requirement) (internal citations omitted).

[71] A52 (Trans. at 9:21–10:1). At oral argument before this Court, Womack's counsel conceded that the bag was within the scope of the initial vehicle search. The following exchange took place at oral argument:

> THE COURT: Why wasn't the bag within the scope of the search? It was on the passenger floor.
>
> COUNSEL: It was in the scope of the search as related to the driver. There is no dispute as to that below. Nobody disputes that. There was probable cause to search the . . .
>
> THE COURT: You don't dispute that the bag was within the scope of the search?
>
> COUNSEL: Yes, as to the driver.

Oral Argument, at 14:23–50, https://livestream.com/accounts/5969852/events/10726676/videos/235146386.

[72] The court observed that it raised standing, which "was not raised by the State and not considered in this decision." A53 (Trans. at 14:23–15:1).

[73] Womack contends that the State improperly asserts an inevitable discovery argument which it did not raise in the proceedings below. The State responds that the officers were entitled to search the backpack, not because it would be inevitably discovered, but because it was in Womack's possession and, thus, it was properly entitled to be searched. *See* Answering Br. at 14–15. We need not address an inevitable discovery argument because it was not fairly raised below. *See* Del. Supr. Ct. R. 8. The only reference to inevitable discovery arose below when the trial court made

## IV.    CONCLUSION

For the reasons set forth above, we AFFIRM the Superior Court's decision denying the Motion to Suppress.

---

an offhand comment about it.  The judge remarked:  "Nor does the fact that I'm indicating that I believe that there would have been an eventual discovery of the firearm weigh into it is [*sic*] simply a side note."  A53 (Trans. at 15:1–4).  The trial court explicitly stated that inevitable discovery was "a side note" that did not weigh into the court's ruling denying the Motion to Suppress.

**VAUGHN**, Justice, concurring:

I continue to believe that *Juliano* was wrongly decided by this Court.